## EUPHEMIA E. WARNER *v.* ISAAC WARNER'S ESTATE.

### *Wills. Cancelling. Republication.*

Where the testator made his will in 1857, and wrote it mostly upon one side of a half sheet of foolscap paper, the signature and attestation clause being upon the other side of the same paper near the top, and two years afterwards wrote below all the writing and near the middle of the sheet, "This will is hereby cancelled and annulled in full this 15th day of March, 1859," it was held to amount to a revocation of the will by "cancelling," and it cannot be thereafter revived by parol declarations of such a purpose or desire on the part of the testator. KELLOGG, J., dissenting.

THIS was an appeal from a decree of the probate court disallowing the will of Isaac Warner deceased, and was tried by the jury at the Chittenden County Court, April Term, 1863, PIERPOINT, J., presiding, upon the plea, that the paper propounded was not the last will and testament of the said deceased.

The proponent introduced testimony tending to prove that two days before the death of said deceased, during his last sickness, he said to his wife (the proponent) that she would find in a trunk where he kept his papers, a will made out by him for her benefit; and that some three weeks after his death she examined the trunk and found among the papers the will in question, and that she thereupon presented the same to the probate court for probate. She also found

there a former will with the testator's name partly torn off. The following facts were duly proved and not disputed, viz: The paper propounded was dated August 22d, A. D. 1857. It was all in the handwriting of the deceased, except the names of the witnesses, and was folded and filed in the handwriting of the deceased, "Isaac Warner's last will and testament," and was in all respects duly executed, witnessed and published, at that date, as his last will and testament, he then being of sound disposing mind and memory. The deceased in the earlier part of his life was a practicing lawyer in this state. He died at Burlington on 'the 11th day of August, 1861, aged 79 years, leaving no will of later date.

The contestants claimed that the deceased on the 15th day of March, 1859, cancelled said will with the intention of revoking it, and in support thereof offered to prove that the deceased at that date wrote on the same paper on which the will is written at the foot of the writing of the will, and on the back of the same paper, what appears there written, with the intention of revoking said will. This was objected to by the proponent, upon the ground that such writing was not such an act of cancelling as the law makes necessary for the revocation of a will, although the deceased might have done it with intent to revoke said will.

It appeared that the will was written upon a sheet of foolscap paper and covered the first page and about one-third of the second page, and that thus far there were no marks of obliteration, cancellation or defacement upon the paper. But upon the last half of the second page were written the following words: "This will is hereby cancelled and annulled. In full this 15th day of March in the year 1859," and several lines lower down upon the page are the following words, erased.

"In testimony whereof I here I have."

Written lengthwise of the paper as folded, and below the filing of the paper upon the back, being the outside on fourth page, were these words: "Cancelled and is null and void. I. Warner."

The court against the objection of the proponent admitted the testimony of one Charles F. Warner, which tended to prove that the testator intended the said writings upon the will as a revocation by cancelling, and that he first designed to make another will, but

finally decided to make no will, but leave it to the law to divide his property.

Upon the testimony and facts proved, the proponent claimed, that the court should direct a verdict establishing the will. The court refused so to rule, and submitted the case to the jury. The proponent asked the court further to charge the jury upon several points presented, which the court declined to do.

The jury returned a verdict that said instrument was not the last will and testament of the said Isaac Warner deceased.

To the several rulings of the court, the refusal to charge as requested and the charge as given the proponent excepted.

*Daniel Roberts*, for the proponent:

I. The will was not *revoked.*

1. Obviously, this was an attempt at revocation by a " writing," lacking, to completeness, only attestation. Failing as a written revocation, we cannot, for the sake of the intent, construe it to be, what it clearly was not, viz: " a *burning, cancelling* or *obliterating.*"

2. The intent to revoke is, by itself alone, nothing. There must be the necessary statutory *act* done, to which the intent can attach itself. These acts are symbolic, and the law admits no substitution, or equivalents. Extreme strictness and literalness of construction prevails here. *Blanchard* v. *Blanchard*, 32 Vt. 62 ; *Leaycroft* v. *Simmons*, 3 Bradf. 44 ; *Clingam* v. *Mitcheltree*, 31 Penn. St. 25 ; *Hise* v. *Fincher*, 10 Iredell, 139 ; *Kent* v. *Mehaffey*, 10 Ohio (N. S.) 204.

3. This will was not *burned*, nor *obliterated*, nor *torn.* It was not *cancelled.* This is a question of definitions. The word *cancel* has its primary and its secondary, or figurative signification.

(*a.*) Etymologically, it has only the former meaning *cancello*— " 1. To make like a lattice, to lattice. 2. (In the latin of the jurists)—to strike through a writing in the form of a lattice. (**X**)— to strike or cross out, to cancel, as *testamentum, chirographum.*" Andrew's Latin Dictionary.

*Cancel, cancelled.* See Worcester, Webster and Richardson's Dictionaries ; 2 Bl. Com. 309 ; Roget's Thesaurus Su. 552 and 756 ; *t/* Burrill's Law Dic. Bouvier's do. " Cancelled, defaced, rased, blotted,

Warner *v.* Warner's Est.

or put out," "*illinire;*" Swinb. Part 7, § 16; *Stephens* v. *Taprell,* 2 Curteis, 458; *Winsor* v. *Pratt,* 6 E. C. L. 290.

(*b.*) This word in the statute is employed in this primary sense only. Its collocation with *burning, obliterating* and *tearing* denotes an act *ejusdem generis.* It denotes defacement, obliteration or other marks of repudiation upon the writing—the *script.* As a mere *singeing* is not a *burning* (*Clark* v. *Scripps,* 22 Eng. L. & Eq. 627) so no amount of cancellation is a "destruction" under the words "burning, tearing or otherwise destroying" in Stat. 1 vic. ch. 26. *Stephens* v. *Taprel, supra.; Goods of Fay,* 9 Eng. L. & Eq. 600; *Goods of Brewster,* 6 Jurist, (N. S.) 56.

Substitute for this primary meaning the secondary sense, and the statute will read—no will shall be *revoked,* except by *revoking* it.

The entirety of the will must be destroyed, so that it may be said it no longer exists as it was. *Reed* v. *Harris,* 33 E. C. L. 57; Redfield's Wills, 313, 314, and notes. Great inconvenience arises in holding that there may be a *virtual* compliance with the statute. Lord DENMAN, C. J., in *Reed* v. *Harris.* No declaration of burning, obliterating or cancelling is an equivalent for the *act* of burning, &c.

(*c.*) Whether these writings constitute the *act* of cancellation is determinable upon inspection. If the will does not appear to be cancelled, it is not cancelled, whatever the intent. In point are *Hilton* v. *King,* 3 Levinz, 86; *Lewis* v. *Lewis,* 2 Watts & Serg. 455; *McPherson* v. *Clark,* 3 Bradf. 95; *Martins* v. *Gardiner,* 8 Simons, 73; *Clark* v. *Smith,* 34 Barb. 140; *Grantley* v. *Garthwaite,* 2 Russ. Ch. 90; *Heise* v. *Heise,* 3 Penn. 246; *Overall* v. *Overall,* Little's Sel. Cas. RUFFIN, C. J., in *Bethel* v. *Moore,* 2 Dev. & Bat. 316; *Bibb* v. *Thomas,* 2 W. Bl. 1043, stands upon the ground of tearing only. *Reed* v. *Harris,* 33 E. C. L. 57; *Clark* v. *Scripp,* 22 Eng. L. & Eq. 627; 1 Williams' Ex. 113; 1 Jarm. Wills, 116, 117; 2 Am. L. Cas. 688, 692.

*White* v. *Casten,* 1 Jones' Law R. (N. C.) 197, ran upon the verge; but there was an actual tearing. This case questioned in Red. Wills, 319.

II. There was error in admitting the subsequent declarations of the testator and in the effect given to them in the charge. *Dan* v.

*Brown,* 4 Cowen, 483 ; *Waterman* v. *Whitney,* 1 Kernan, 157 ; *Lewis* v. *Lewis,* 2 Watts & Serg. 455 ; *Stains* v. *Stewart,* 8 Jurist (N. S.) 440 ; *Doe* v. *Palmer,* 6 Eng. L. & Eq. 155 ; Red. Wills, 331 ; 2 Am. L. Cas. 688.

III.    This will was republished. 1 Wms. Ex. 169, 171, 175, 179 ; 2 Levinz, 86 ; 3 Add. 48 ; 2 Hagg. 209 ; 2 Am. L. Cas. 725–6 ; 2 Binn. 406 ; 2 Whart. 103 ; 22 Penn. St. 416 ; 1 Grant's Cas. 75 ; 8 Barr, 498 ; 40 Penn. 217 ; 5 Conn. 164 ; Red. Wills, 367.

( *Wm. G. Shaw* and *E. J. Phelps,* for the contestants, cited 33 E. C. L. 57 ; *Avery* v. *Pixley,* 4 Mass. 460 ; *Moore* v. *Moore,* Phillimore, 109, 123 ; 1 Jarman, 155 ; 2 Am. Lead. Cas. 645 ; *Bibb* v. *Thomas,* 2 W. Bl. 1043 ; *Clark* v. *Scripps,* 2 E. L. & E. 630 ; 1 Wms. Ex'rs 110 ; *Baptist Church* v. *Robbarts,* 2 Barr, 110 ; Redf. on Wills, 367–70, 374.

BARRETT, J.    The main question in this case is, whether the will was revoked by the act of the testator, in writing what he did on the second page of the instrument.

The statute prescribes the several and only modes in which a will, duly executed, may be revoked, viz : 1st, by some will, codicil or other writing.    2d, by burning, tearing, cancelling or obliterating. It is clear, and is conceded, that this will is not revoked by either of the first of said modes ; nor by either of the other modes, unless it be by *cancelling.*    That is a mode by itself, different and distinct from burning or obliterating, though obliteration may in some cases be an act of cancelling.    In the present case there is no obliteration. So the only question is, was the act of the testator a *cancelling,* within the meaning and intent of the statute ?

We regard it as a settled doctrine of the interpretation of statutes, that when an English statute is enacted in this state, if it had received a judicial interpretation in England prior to its enactment here, it is to be taken that the language is used in our statutes in the sense given to it by the adjudications in England, unless there is some other sense impressed upon it by attendant provisions of the statute thus enacted.    But if it had received no such interpretation, it stands for interpretation here the same as if it had been first enacted here.    Adjudications in England, made since such enactment here, have not the force of authority, as to the sense of the language

as used in our law. As resting on reasons that commend themselves to our approbation, all adjudications upon the subject may aid in giving to terms used a just sense and effect, having reference to the subject matter of, and to the purposes designed to be served by, the statute in question.

It is plain that the object of the statute 29 Car. II. is the same as that for which our similar statute was enacted ; and, in the matter of wills, to provide ample security against their revocation being effectuated, unless by means insuring the utmost certainty that it was the intent of the testator to revoke what would otherwise stand for, and be effectual as, a will disposing of his worldly effects.

To this intent, the provisions in this behalf have been made. The class of acts of revocation, of which cancelling constitutes one mode, contemplates something to be done to the instrument itself, showing, or tending to show, that, by such act, the testator designed to make an end of it as his will ; and each of the modes prescribed was designed to be equally effectual in that respect. If the document should be entirely burned up, or entirely obliterated, or torn into scraps, or covered over with closely drawn cross lines, there would be no doubt as to the intent of the testator. But it has been held not to be necessary to go to that extent in any of the modes, in order to answer the requirements of the statute ; and that the slightest degree of either mode, provided it appear even by resort to other evidence, that the act was done with the intent to have it constitute a revocation, is effectual as such revocation. Accordingly it has been decided that the slightest burning or tearing of the material on which the will was written, even though none of the script should be destroyed or effaced,—that the erasure of a single word, or the drawing of a slight line across the face of the script, partaking of the character of the act prescribed by the statute, if it appear to have been done in the accomplishment of such act, effectuates a revocation.

Now it is obvious, from the general current of the cases early and late, that the leading idea is, that the testator must perform some one of the prescribed acts upon the instrument itself, so that, when produced, it shall bear the mark of such act. What amounts to burning, to tearing, to obliterating, is not the subject of question. But what amounts to *cancelling*,—how, with reference to the text of the

instrument, must the act be done,—not as to the shape or character of the marks, but *where* must they be located, is the main point of debate in the present case. The proponent claims that the cancelling marks must be made upon some part of the written text of the will.

The Latin verb, from which the term *cancel* is derived, means to make lattice work, and the corresponding noun in Latin, in the plural, *cancelli*, signifies lattice work ; and when applied to marks, means marks made in the form of lattice work. How this term came to be applied to marks made upon written instruments, for the purpose of destroying their validity, is obvious both from general and judicial history, not only as taught by the books, but as derived from observation. To draw cross lines over the face of a written instrument has been, and is, a common mode of showing the intent, thereby, to make an end of it as an instrument in force. In earlier times, when the ability to write was possessed by very few, the great mass of persons of all grades from the highest lord to the lowest peasant, could manifest their intent, with pen and ink, only by unlettered marks. While they would be dependent on the few skilled in the art, to draw their instruments of contract in making disposition of their property, they could and did resort to various modes, by which, without *clerkly* aid, to make an end of their validity.

From the fact that cross marks were so easily made, and, when made upon the face of a written instrument, were so significant that, thereby, the maker of them designed to put an end to the continuing validity of the instrument, this mode was recognized and adopted into the statute, in common with tearing, burning and obliterating, as one by which wills might be revoked. In some instances this mode might be preferable to either of the others, as when it should be desirable to preserve the legibility of the entire instrument, which might not happen as the result of burning, tearing or obliterating. While, therefore, a common and customary mode of manifesting the intent to abrogate the instrument, by drawing cross lines over the face of it, gave rise to the use of the term *cancel*, still the entire judicial history of the subject shows that *that* manner of marking an instrument is by no means essential in order to answer to the full force and effect of the term in its *legal* sense. The net result of

all the cases and all the text-books, as well as the reason of the thing, and the appropriate analogies, seems to be this,—that, when the instrument is so marked by the maker of it, as to show clearly, whenever it is produced, that the act was designed by him to be a *cancelling*, that act becomes effectual, by force of the statute, as a revocation of the will by cancelling.

In the present case the act of the testator was done, not only upon the paper on which the will was written, but upon such a part of it as always to go with that part of the will which contained the disposition of the property,—not indeed on the face, but on the back of such disposition. It is obvious that the *act* itself was designed to constitute a revocation by *cancelling*. This is not a mere memorandum or declaration, which, as such, operates a legal effect by force of the terms, but it was the performing of an act upon the instrument itself, which act operates the legal effect. If cross lines had been drawn over the face of the writing of the will, they would have been effectual, because they would have constituted an act done to the instrument, showing the intent of the testator, by that act, to destroy the validity of it. Instead of thus drawing lines, he equally performed an act to the substance of the instrument, and as inseparable from the written text as cross lines over its face, showing, with even clearer certainty, the intent, by that act, to destroy its validity. Instead of leaving the significance of informal marks to be fixed by the location they occupy, he formed the marks into letters and words expressive of their significance, and as effectually placed them upon the instrument, as if they had been made upon the face of the script of the will. If he had drawn a slight mark from the top to the bottom of the writing, though that would not have been *cancelli*, within the etymological and primary meaning of the term, still it is conceded that it would have been a *cancelling* of the will, if done with that intent, within the legal meaning of that term. We think that writing upon the will, as was done in this case, as nearly answers to the primary sense of that term, as such mark would, and, having regard to the ground on which effect is given to an act of cancellation, such writing answers every reason and requisite of the law.

The case of *Lewis* v. *Lewis*, 2 W. & Serg. 455, comes nearer to a position of conflict with the view we hold, than any one to which

attention has been called ; yet its characterizing facts are so different from those of the case in hand, as, in our judgment, to relieve the two cases from any such conflict.   In that case, the word " *obsolete* " was written by the testator on the margin, against a certain clause in the will.   The court held that that did not, of itself, constitute a *cancelling*.   There was no evidence, aside from what that word imported in that location, of the intention of the testator, as to the character and effect of the act of writing it.   It was not a *cancellation* in the primary sense of the term, not being a *cross-marking* on the face of the writing. | It was not in the wider sense accorded to it by the law, because it was not upon the writing at all, as and for a mark drawn over it.   The word itself did not, in its position, indicate that the act of making it was designed to be an act of cancelling.   It was so placed upon the paper that it might be separated and leave the written part of the will entire and intact.   It might have been designed as a mere memorandum or declaration, to have effect as such, and not as the effectual fact which operates in virtue of the act of thus marking the instrument.

Several cases were cited in the argument, in which there had been erasures or interlineations, or both, and it was held that the wills were not thereby revoked, because it did not appear, on the one hand, to have been the intention of the testator to have the act constitute a *cancelling*, or, on the other, if so intended, that the act was completed by the testator having done all that he designed to do as constituting such act of cancelling.   Such are *Winsor et al.* v. *Pratt et als.*, 6 E. C. L. 299 ; *McPherson* v. *Clark*, 3 Bradf. 95 ; *Martins* v. *Gardner*, 8 Simons, 73 ; *Clark* v. *Smith*, 34 Barb. 140.

The ground and reason of those and similar decisions are well stated, and cases referred to in Redf. on Wills, 315 ; also in 2 Am. Lead. Cases, 692, where it is said, " Although interlineations, intended to vary the sense of the will, and not to destroy it, cannot, in themselves, amount to a cancellation, there is no room for doubt, that, when taken in connection with actual erasures, they may go to make up the proof of a change of disposing purpose, and show a total or partial revocation of the instrument."   And this is fully sustained by the authorities cited.

There is a class of cases of revocation by burning, tearing or ob-

literating, in which the principle and its application seem to us to be precisely the same that we adopt and make in this case. Primarily, and most naturally; the terms used imply as the idea of the law, that the burning or tearing is to be such as, virtually, to destroy the will as an instrument, and not merely enough to indicate, or be consistent with, an intent to abrogate it; and the same remark is equally applicable to a case of obliteration. Yet in *Avery* v. *Pixley*, 4 Mass. 460, it was held that taking off a seal, placed upon a will as a part of the act of executing the same, although the law did not require such seal, would operate a revocation by tearing, provided it was shown to have been done with that intent. So in *Moore* v. *De La Torre*, 1 Philmore, 375, the will and codicil were cut around the margin at the top and one side, but no part of the writing was touched, except the attestation clause of the codicil was cut through. In this condition they were found in the room of the testatrix after her decease, in a box in which she had kept her papers; and on their being propounded for probate, Sir JOHN NICHOL, after a most elaborate argument, said: "It is the duty of the court to put a rational construction upon this act. In my judgment it must have been done for the purpose of cancelling, revoking and destroying the validity of this instrument. I can put no other rational construction on the act. It must have been done not equivocally, but decidedly, for the purpose of revoking the instrument." The case, on appeal, was fully and most learnedly argued in the High Court of Delegates, before seven most able jurists in this department of the law, and the judgment of the Prerogative Court was sustained. In *Bibb* v. *Thomas*, 2 W. Black. 1043, the will was so torn by the testator as almost to tear a bit off, and then rumpled together and thrown upon the fire, but it soon fell off, and was picked up by a servant, and preserved. By the whole court, Dr. GRAY, Ch. J. "Revocation is an act of the mind, which must be demonstrated by some outward and visible sign or symbol of revocation. The statute has specified four of these; and if these, or any of them, are performed in the slightest manner, this, joined with the declared intent, will be a good revocation. It is not necessary that the will or instrument itself be totally destroyed or consumed, burnt or torn to pieces. The present case falls within two of the specified acts described by the statute.

It is both a burning and a tearing. Throwing it on the fire with an intent to burn, though it is only very slightly singed and falls off, is sufficient within the statute." In *Reed* v. *Harris*, 33 E. C. L. 57, the doctrine of *Bibb* v. *Thomas* is fully asserted, but, in the last case, it was held that there must be an actual burning, to some extent, of the paper of the will. PATTERSON, J., said: "There must, at all events, be a partial burning of the instrument itself. I do not say that a quantity of words must be burnt, but there must be a burning of the paper on which the will is." Similar cases, in which the same doctrine has been held, might be referred to; but such reference is needless, as there is no substantial conflict of decision.

Now, as before intimated, the acts of burning and tearing in the cases cited, are as far from answering to the most natural import of the words used in the statute, as the act in the present case is from answering to the primary idea of making lattice work, or to the less restricted idea of drawing a cross, or even a single mark, on the face of the writing, in order to constitute cancelling.

On the whole, the true legal idea seems to be well expressed in 2 Am. Lead. Cases, 689, as follows: "All that is necessary to a revocation is an absolute revoking intention, manifested by any act, however slight in its nature, which can fairly be considered as a tearing, burning, cancelling, or obliterating, within the meaning of the statute of frauds, and the various legislative enactments which have been based upon it;" and in Williams on Executors, 110, that "the principle appears to have been established, that if the intention to revoke is apparent, an act of destruction or cancellation should carry such intention into effect, although not literally an effectual destruction or cancellation, provided the testator had completed all he designed to do for that purpose."

As to the extent to which such act of revocation must be done in order to be effectual, perhaps Mr. Justice COLERIDGE, in *Reed* v. *Harris*, *supra*, put as proper a general formulary as is to be found, or as can well be framed,—thus: "The question is put whether the will must be destroyed wholly, or to what extent. It is hardly necessary to say; but there must be such an injury, with intent to revoke, as destroys the entirety of the will; because it may then be said that

the instrument no longer exists as it was." This language was used with reference to burning or tearing, as a mode of revocation. Applying it to *cancelling*, " there must be such a marking, with intent to revoke, that it may be said that the instrument no longer exists as it was." In the present case, it would seem pretty palpable, that when the testator had written where he did, " this will is hereby cancelled and annulled in full this 15th day of March, 1857," the instrument no longer existed as it was.

Holding this to be sufficiently, in character, an act of *cancelling*, we proceed to remark, that the intent is so decisively manifested by it, as to give it full effect as an act of revocation. And we regard our brother PIERPOINT as having most aptly expressed the true legal idea, when he said in his charge to the jury, that " in the writing may be combined both an act and a declaration of intention."

Upon the face of the will, when produced, it was, in the eye of the law, cancelled; and the court would have been warranted in so ruling. This being so, the evidence that was received of the sayings of the testator, became immaterial, whether made at the time of the act of cancelling, or subsequently thereto. Hence it becomes unnecessary to decide whether the testimony, as to his sayings made subsequently to that act, would have been admissible as evidence of his intent in doing it, if it had been necessary for the defendant to show, *aliunde* the instrument, that the act was done with the intent to revoke the will by cancelling.

Some of the members of the court think the proponent had given occasion for the introduction of this evidence, by the character of the evidence which she had introduced in the opening of her case.

The only remaining question is, as to the republication claimed by the proponent to have been made by sayings of the testator a few days before his death.

The will was revoked by the act of cancelling. The law of this state, in cases like the present, recognizes as valid such wills as are made in the mode prescribed by the statute, which statute prescribes the only modes in which they may be revoked. When thus revoked, it would seem quite incongruous that the instrument could be restored to its original vitality and force by mere words, with-

out any further act done upon, or with reference to, such instrument.

In cases like the present, we have no wills at, or by force of common or ecclesiastical law, but only by statute. The substance of the 5th section of the statute of frauds, 29 Car. II. ch. 3, was enacted as early as 1787 in this state; and in 1821 the full force of that section, as also of the 6th section, was extended to personal as well as to real estate, and the same has been substantially the law of this state ever since. Slade's St. ch. 44, §§ 17, 18; G. S. ch. 49, §§ 6, 7.

The case before us does not bring in question the effect of executing a codicil with due formalities, after the act of revocation, or of another testamentary instrument, referring to, and designed to restore the revoked instrument; nor does it bring in question other acts done to or upon the instrument itself subsequently to the act of revocation; nor does it involve, or call for any discussion of the subject in the light of the cases decided in other states in which the English law as to wills has existed to a greater or less extent. We are therefore relieved from the complications and conflicts which the books show to have often troubled other courts; and for the additional reason that the evidence, upon which the point as to republication is predicated, could only bear upon the question of the intent of the testator in doing the act of revocation. The proponent had the full benefit of that evidence in that view, whether properly or not.

In the discussion and decision of this case, we have given no consideration to the act or words of the testator, in what he wrote upon the outside of the folded will under the filing.

The judgment is affirmed.