(11 Misc. Rep. 675.)

## In re BROOKMAN.

### (Surrogate's Court, Kings County. March, 1895.)

**1. WILLS—REVOCATION—DRAWING LINE THROUGH SIGNATURE.**

Under 2 Rev. St. p. 64, § 42, providing that a will may be revoked by being "burnt, torn, cancelled, obliterated or destroyed with the intent and for the purpose of revoking the same by the testator," a testator may revoke his will by drawing lines through his signature, animo revocandi.

**2. SAME—PROOF OF INTENT.**

After testator's death, a paper purporting to be a will, dated 16 years before his death, which occurred in 1895, with a codicil on the same sheet of paper, dated four years later, was found among his papers. The signature to the codicil was crossed out with ink lines, and on it was written in testator's handwriting: "May 20, 1892. Void. H. D. B. [testator's initials]." The will, after providing for the widow, divided the residue of the estate equally between his three children, and appointed testator's brother executor and trustee. The codicil was intended merely to readjust the shares of one of the children, which had depreciated in value. It appeared that shortly before the date of the memorandum on the codicil testator had quarreled with his brother. *Held*, that testator intended to revoke both will and codicil.

Application for letters of administration on the estate of Henry D. Brookman, deceased. Granted.

Hand, Bonney, Pell & Jones, for petitioner.

ABBOTT, S. Henry D. Brookman departed this life in the city of Brooklyn on the 19th day of February, 1895. In pursuance of an order of this court, his box in the Mercantile Safe-Deposit Company in the city of New York was opened, with a view to discovering whether the deceased had left any last will and testament, and in said box, among a bundle of canceled and worthless papers, was found a paper purporting to be a will dated July 23, 1879, and a codicil dated June 16, 1883. The codicil began on the same sheet of paper upon which the will ended, there being only a short blank space between the end of the will and the beginning of the codicil, and both instruments were securely tied together in one cover. When so discovered at the said safe-deposit company, the signature of the deceased to such codicil was found to have been erased by being crossed out in ink lines, and with the following memorandum, in the handwriting of the decedent, alongside the canceled signature: "May 20, '92, void, H. D. B."

This is an application, concurred in by all the next of kin, for the granting of letters of administration to the widow, on the ground that the deceased died intestate, and a careful review of all the circumstances surrounding this case leads me to the conclusion that the application should be granted. Our statutes provide that a will may be revoked by being "burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same by the testator" (2 Rev. St. p. 64, § 42; Birdseye's Rev. St. 3343); and the law is well settled that a testator may cancel and revoke his will by drawing ink lines through the signature, animo revocandi (In re Philp's Will [Sup.] 19 N. Y. Supp. 13).

The question before this court is, did the deceased intend to revoke the will as well as the codicil when he canceled his signature to, and made the memorandum upon, the codicil, and did his action revoke the whole or only a part of the instrument? I have been unable to find any case bearing upon this precise question, but some English cases pass upon the converse of this proposition, and the reasoning therein employed, I think, may be held applicable to this case. Thus, when a testator had destroyed his will, but not the codicil, it was held that the codicil, being dependent upon and inseparably blended with the provisions of the will, was revoked also, and that surrounding circumstances must be taken into consideration in solving the question whether the testator intended to revoke the whole or only part of the instrument.

Sir John Nicholl says in Medlycott v. Assheton, 2 Addams, Ecc. 229–231:

"A codicil is prima facie dependent on the will, and the cancellation of the will is an implied revocation of the codicil. But there have been cases where the codicil has appeared so independent of and unconnected with the will that, under circumstances, the codicil has been established, though the will has been held invalid. It is a question altogether of intention. Consequently, the legal presumption in this case may be repelled; namely, by showing that the testatrix intended the codicil to operate, notwithstanding the revocation of the will. In my judgment, however, the circumstances of this case are not sufficient to establish such an intention in order to repel the legal presumption. The codicil in this case appears connected with the will, for the principal legatees in the codicil are 'her two trustees,' being such under the will, and, the will being revoked, they no longer retain that character. Even the distribution of the trinkets, made by the codicil, might be influenced by the disposition contained in the will. * * * Under these considerations, I am of opinion that the legal presumption of the codicil, being revoked by the cancellation of the will, is not sufficiently repelled by circumstances showing a different intention in the testatrix, and, consequently, that she must be pronounced to be dead intestate."

See, also, Coppin v. Dillon, 4 Hagg. Ecc. 369; Schouler, Wills, § 400; 1 Jarm. Wills, 139; 1 Redf. Wills, 316.

This will and codicil must be taken as one instrument, and both together considered as the will of the deceased. Brown v. Clark, 77 N. Y. 369–378; 2 Rev. St. p. 68, § 71; Birdseye's Rev. St. 3345. The codicil simply modifies the will in a few particulars, and, as modified, in all respects ratifies and confirms it. The codicil, standing alone, as a separate instrument, would utterly fail to make an intelligent or total disposition of this estate, and would not be a legal entity, independent of the existence of the will. The provisions of the codicil are inseparably blended with those of the will, and the act which revoked the codicil must, under the circumstances of this case, have been intended to revoke the will also.

There are other circumstances which render it impossible for me to escape from the conclusion that Mr. Brookman intended to revoke the whole instrument. The scheme of the will and codicil was, after providing for the widow, to divide the rest of the estate, as equally as possible, between his three children; and in carrying out this scheme he devised to each of them a life estate, coupled with certain testamentary powers in valuable parcels of land then owned by him; and one necessity for having any codicil executed was to

readjust one child's share, which had declined in value since the making of the will. In the year 1892, shortly before making the memorandum and canceling the signature upon the codicil, the hitherto friendly relations which had existed between the deceased and his brother were sundered, and their business interests were entirely severed. The deceased owned in common with his brother valuable real estate, and, by his said will, he devised his interest in said real estate to one of his daughters, such devise of this interest being most of her share under the will. Thus, in separating and severing his interests from his brother, as a result of their quarrel, he divested himself of the entire real estate which by the will had been devised as the share of this daughter, and the entire scheme of the will was overthrown by this conveyance, and the result, undoubtedly, was to revoke the devise to this child. In other words, as the case stood on the 20th day of May, 1892, when the signature was canceled, the plan of the decedent to specifically devise to each of his three children real estate of the estimated value of $300,000 or $400,000 was annulled by the conveyances which had just before that date been executed by him to his brother. One of his three children was in this way, unintentionally, practically disinherited, with no reference to herself, and as a purely accidental consequence of a difference between her father and her uncle; and it was the will, and not the codicil portion of the instrument, the plan of which was thus defeated. The will also designated the brother as an executor ·and trustee, but obviously the testator, having become unable to amicably hold even a piece of real estate in common with his brother, was unwilling to have his brother left in power over his estate and family as an executor or trustee. Yet it was the will, and not the codicil, which would have made the brother executor and trustee. It appears that his relations with all his children were entirely harmonious down to the day of his death, and no reason existed why any discrimination should have been made against any child. He also frequently stated during the last year of his life that he had destroyed his will, and while, under the statute, such verbal revocation will not suffice, yet I think it bears upon the question of intent, and should be given some weight under the circumstances.

It would seem, therefore, that the decedent resorted to this act of cancellation with a view to remedy what would otherwise have been a grievous and unintentional inequality between his children. Destruction of the codicil would not have had the least tendency to correct the injustice which the decedent desired to avoid. Cancellation of the entire instrument, being the will modified and reaffirmed by the codicil, furnished a complete remedy. I am of the opinion, therefore, taking into consideration all the circumstances surrounding the act of Mr. Brookman on May 20, 1892, that he intended to revoke the entire instrument, consisting of his will and codicil, and that he died intestate, and that letters of administration should issue to the petitioner. Ordered accordingly.