Where testator has drawn across the provisions of a codicil, including the signature and attestation clause, numerous cross marks in lead pencil, and has written the word "Canceled" in the attestation clause, and the date in another place, the codicil is canceled, within 2 Rev. St. p. 64, § 42, providing that a will may be revoked by some other writing, or if it be burned, torn, canceled, obliberated, or destroyed with intent of revoking it.

2. SAME.

A codicil to a will is canceled where the first clause thereof has several cross marks in lead pencil made by the testator, and there are written at the foot of the attestation clause the words, "The codicil in the within is this day 20th. 1895 canceld for personal abuse and ungratefulness on her part," and they are signed by the testator.

In the matter of the probate of the will of George Alger, deceased. Probate of will allowed, but of codicils denied.

James P. Philip, for proponent.
Marcus Campbell, for contestant.
Llewellyn A. Wray, special guardian.

CHURCH, S. The will of George Alger, and two codicils, are offered for probate. The admission of the codicils to probate is contested on the ground that they have been revoked by the testator. The facts upon which the contestant contends that there has been a revocation of such codicils are as follows: Upon the first codicil to the will the testator has drawn across all of the provisions thereof, including the signature and the attestation clause, numerous cross marks in lead pencil, and has also written in two places in the attestation clause the word "Canceled," and in another place is written the words "April 19, 1895." The second codicil to the will contains several cross marks in lead pencil, which cross marks, however, are only in the first clause of the same. Immediately at the foot of the attestation clause there are written the following words: "Brooklyn April. The codicil in the within is this day 20th. 1895 canceld for personal abuse and ungratefulness on her part. Geo. Alger 203 12th St in the City of Brooklyn, N. Y." The words "Geo. Alger" are also written a second time below this.

It has been shown by the testimony of witnesses that the word "canceled" and the date written in the first codicil are in the handwriting of the deceased, and that the subscription at the end of the second codicil is also in the handwriting of the deceased. The question, therefore, presented for consideration, is whether the above facts constitute a sufficient cancellation of these codicils, within the meaning of the statute, to work a revocation of the same.

By the statute of wills (2 Rev. St. p. 64, § 42), which provides

how wills may be revoked, there are outlined two general methods of revocation:

"First, by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will was required by law to be executed; and, secondly, if such will be 'burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same,' that then such act shall work a revocation."

The sole question, therefore, is whether it has been canceled, within the meaning of such section. What is the meaning of the word "canceled," as used in the above statute? The meaning of the word "cancel" is derived from the word "cancelli," crossbars or latticework. Hence, as originally used, it referred to making cross lines on writing, and is defined by Webster: "To cross the lines of a writing and deface them." From this is derived the synonym, as defined by Webster: "To annul or destroy; as, to cancel an obligation or a debt." Therefore, where it is apparent that the cross lines have been made by the testator with the evident intention of effecting a revocation, it has been held that such act is sufficient to work a revocation of the will. As the first codicil contains the cross marks fully covering the face of the same, and the word "canceled" is concededly in the handwriting of the deceased, there is no question that a complete revocation has been effected of the same in pursuance of the statute. In re Brookman, 11 Misc. Rep. 675, 33 N. Y. Supp. 575.

As to the second codicil it is urged, however, that, as the cancellation marks were drawn only through a portion of the instrument, it is insufficient to work a revocation of the same, and that the words at the end of the codicil are not a cancellation, within the meaning of the statute. The court of appeals, in Lovell v. Quitman, 88 N. Y. 380, 42 Am. Rep. 254, decided that while a part of a will could be revoked by an instrument in writing, as required by the statute, yet that a case of revocation accomplished by burning, tearing, canceling, or obliterating an instrument applied to the instrument as a whole, and that there could not be a revocation of a part of a will by tearing out or mutilating that portion; and accordingly where, in the will in question, the testator had drawn cross lines through certain clauses of the will, it was held that, as it was manifest that he did not intend to revoke the entire will, his action in this respect was insufficient to in any way affect the same, and consequently the entire will was admitted to probate. This case would be precisely similar to the Quitman Case, were it not for the declaration of intention written at the foot of the codicil; and the question again turns on whether the word "canceled" means cancellation solely by lines drawn across the face of an instrument, or may be affected by other acts. There is no doubt that originally the word "cancel" was confined to the making of cross marks indicating the latticework from which it was derived, and grew to be adopted for such purposes in consequence of the fact that in early times few persons were capable of writing, and therefore were per-

mitted to manifest their intention by drawing lines across the face of a paper. It has not been held necessary that such lines on the face of a paper should be cross lines, and in fact it has been held that a single line drawn across a sheet of paper is sufficient to effect a cancellation of the same, if it be shown to have been done for the purpose of revoking an instrument. In considering what is a sufficient revocation by canceling, it will be also instructive to examine what has been held to be sufficient revocation by way of burning, tearing, or destroying the same; and the courts have repeatedly held that it is not necessary, in order for a will to be revoked by burning, that it should be completely consumed by the fire, or, for a will to be revoked by tearing, that it should be completely torn into pieces, but that where the testator desired to revoke the will, and threw the same into the fire, and the same has been but slightly scorched, so that the handwriting is still legible, still that was a sufficient revocation. It has been also decided that where a seal which was appended to a will, and which was unnecessary, has been torn off by the testator for the purpose and with the intention of revoking the same, although he has not torn the signature off, or any part of the writing of the will, there was a sufficient tearing of the same to effect a revocation.

The rule upon this point is well settled in Dan v. Brown, 4 Cow. 490, 15 Am. Dec. 395, in which the court states as follows:

"There must be a canceling animo revocandi. Revocation is an act of the mind, which must be demonstrated by some outward and visible sign of revocation. The statute has prescribed four. If any of them are performed in the slightest manner, joined with a declared intent to revoke, it will be an effectual revocation."

In Re Brookman, supra, it was held, where the testator drew a line through his signature, adding the word "void," with his initials, to be sufficient to revoke the entire codicil.

In 2 Am. Lead. Cas. 689, it was said:

"All that is necessary to a revocation is an absolute revoking intention, manifested by any act, however slight in its nature, which can fairly be considered as a tearing, burning, canceling, or obliterating, within the meaning of the statute."

When a will is once properly executed by the testator, signed and sealed, there seems to be no good reason why the drawing of a line through the signature should be entitled to any greater weight than drawing a line through any other paragraph of the same, if it is apparent that in drawing the line through the other paragraph there was an intention to revoke the entire instrument.

An examination of these two codicils will show: That the testator evidently canceled the first codicil on the 19th of April, and probably started to cancel the second codicil in the same manner that he had done the first. Whether it was from some advice or suggestion, or from the thought that possibly the mere drawing of such a line, without any evidence as to his reasons therefor, would be insuffi-

cient, the testator was evidently prompted to write the words which he did at the end of the second codicil, which plainly referred to both of the codicils. That thus the statement on this instrument showing that the crossing out which he made at the beginning of the instrument was done for the purpose of revoking the same, and it seems that this was sufficient to effectuate a revocation of the entire instrument, and therefore that it is not a parallel case to Lovell v. Quitman. This conclusion may be further strengthened by the fact that it is not necessary that a canceling should only be evidenced by the drawing of lines or cross lines on the face of the instrument. For instance, revenue stamps, which were recently required to be applied to checks and notes, were canceled by the drawer of the check placing his initials, together with the date, on the same. Banks have been in the habit of canceling checks by an instrument which cuts a slit in the face of the check where it was written upon. Other institutions cancel obligations by having an instrument which punches out the word "Canceled" across the face of the instrument. Certainly it seems that, when a person is capable of writing at the end of an instrument that it is his intention and wish to cancel the same, his act should be entitled to as much credit as those of a person who simply draws a line across the same, and states to a third party that he does it for the purpose of canceling it.

Warner v. Warner's Estate, 37 Vt. 356, arose under circumstances precisely similar to those in the case at bar. In that case the testator wrote below all the writing, and near the middle of the sheet, these words:

"This will is hereby canceled and annulled in full, this 15th day of March, 1859."

In that case the court states as follows:

"If the document should be entirely burned up, entirely obliterated, or torn into scraps, or covered with crossly drawn cross lines, there would be no doubt as to the intent of the testator. But it has been held not to be necessary to go to that extent in any of the modes in order to answer the requirements of the statute, and that the slightest degree of either mode, provided it appears even by resort to other evidence that the act was done with the intent to have it constitute a revocation, is effectual as such revocation. Accordingly it has been decided that the slightest burning or tearing of the material on which the will was written, even though none of the script should be destroyed or effaced, or that the erasure of a single word, or the drawing of a straight line across the face of the script, partaking of the character of the act prescribed by the statute, if it appears to have been done in the accomplishment of such act, effectuates a revocation."

The court also stated further, commenting upon the exact state of affairs which arose therein, as follows:

"If cross lines had been drawn over the face of the writing of the will, they would have been effectual, because they would have constituted an act done to the instrument, showing the intention of the testator by that act to destroy the validity of it. Instead of thus drawing lines, he equally performed an act to the substance of the instrument, and as inseparable from

the written text as cross lines over its face, showing with even clearer certainty the intent by that act to destroy its validity. Instead of leaving the significance of informal marks to be fixed by the location they occupy, he formed the marks in letters and words expressive of their significance, and as effectually placed upon the instrument as if they had been made upon the face of the script of the will."

It seems to me, therefore, that by these acts of the testator there has been a sufficient cancellation of these codicils to effectuate the revocation of the same, and therefore the probate of these codicils should be denied. Let a decree be entered accordingly.

Decreed accordingly.