My decision, therefore, is that the paper writing propounded as the last will and testament of William Sperb, deceased, is entitled to probate as and for the last will and testament of him, the said William Sperb, deceased, and that a decree to this end, admitting such paper to probate as a will of both real and personal property, should be entered in due form of law. Let such decision and decree be submitted to me for my signature.

Decreed accordingly.

(71 Misc. Rep. 372.)

### In re VAN WOERT'S WILL.

(Surrogate's Court, Saratoga County. March, 1911.)

WILLS (§ 171*)—REVOCATION—EVIDENCE.

Where an instrument duly executed as a will had been in the possession of decedent for a long time before her death and was found in her effects afterwards, and where the middle of the will containing one clause and part of another had been torn out and the cover of the will was gone, and a copy of the will which had also been in her possession had her name torn off, it is sufficient to show an intent to revoke the will, and the mutilation thereof is sufficient for that purpose.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 451; Dec. Dig. § 171.*]

Proceedings for the probate of the will of Gertrude A. Van Woert. Probate denied.

Edward D. Cutler (Henry V. Borst, of counsel), for petitioner.

Butler & Kilmer (W. P. Butler, of counsel), for Louise A. Stoddard, contestant.

OSTRANDER, S. The paper propounded as the will of deceased was executed in due form by the deceased on the 15th day of January, 1904, at the office of Hon. E. D. Cutler, former surrogate of Schenectady county. Judge Cutler and Miss Hanna, his clerk, acted as witnesses. No question is here raised as to the due execution of said paper as and for the will of deceased, nor as to her capacity and freedom from restraint. At the time of the execution of the paper she told Judge Cutler that she wanted to give numerous articles to various relatives but was not prepared to put them in the will, and he prepared a memorandum, for her to sign later, that would indicate what she desired to go to these relatives. But it is claimed by the contestant that the instrument was revoked by the deceased in her lifetime. After the paper was executed, Miss Van Woert took it away with her. Some time between January 15, 1904, and March 18, 1904, she had the alleged will at the house of Capt. Pratt in Schenectady; and a copy of it, except the attestation clause, was made, partly by Miss Van Woert and partly by Miss Soles. This was verified by Capt. Pratt. After the copy was made, the alleged will was put for safe-keeping for a while in Capt. Pratt's box in the Schenectady Sav-

ings Institution. After a little time Miss Van Woert took it away; and part of it was found, together with the copy, after her death, in a chest at her house.

When found after her death, the copy had been changed by having her name torn off; and the words, "in witness whereof I have here-unto set my hand and seal this 15th day of January, 1904," were erased by pencil lines drawn through them. When the alleged will was drawn, it consisted of two sheets or pages of typewritten paper, and, as would appear from the copy in evidence, contained five clauses consecutively numbered, in addition to the clause beginning "lastly," in which she named executrices; and it had a cover pasted on it into which were pasted two typewritten pages. When found the cover was gone and the top of the second page, containing the fifth clause and a few words of the end of the fourth clause, was torn off; and the two pages, mutilated as above, were separate and apart. The portion torn out has not been produced. The first clause of the alleged will directed payment of her debts and funeral expenses; the second gave $100 for perpetual care of her cemetery lot; the third gave $50 to her niece, Louise Stoddard; the fourth gave to the persons whose names would appear upon a list or memorandum inclosed in the same envelope with her will the articles appearing on said list—the list to be identified by her signature and to be of same effect as if the several items were specifically bequeathed to said persons in the body of the will. (The paper prepared for this memorandum by Judge Cutler was found among her papers, unsigned and without designation of persons or articles.) The fifth clause gave the residue of her estate to her cousin, Alice F. Soles.

The will was not offered as a lost or destroyed will, but as an original instrument which the testatrix had attempted to modify by obliterating the fifth clause. Contestant insists that the mutilation of the will revoked it, and, if not, that the surrogate has no jurisdiction to decide what were the words of the missing clause, inasmuch as the clause was totally destroyed; so that it requires evidence other than an inspection of the will to determine what were the words destroyed, and that this is a matter for a court of equity.

Under the statute, a will may be revoked in only three ways: (a) By some other will in writing; (b) by some other writing of the testator declaring such revocation and executed with the same formalities with which the will itself was required by law to be executed; (c) by burning, tearing, canceling, obliterating, or destroying, with the intent and for the purpose of revoking the same.

Under the proofs here, the alleged will was not revoked, unless the tearing out of the end of the fourth and the whole of the fifth clause was done by the testator with intent to destroy the whole will.

Matter of Curtis, 135 App. Div. 745, 119 N. Y. Supp. 1004, cited by the proponent, is authority for the proposition that tearing out a single clause of a will, with intent to revoke that clause, and to permit the remainder to stand, is not a revocation of the entire will, but amounts merely to an attempt to alter the will by canceling that clause;

and that, if the matter so torn out can be established, the whole will, as restored, should be admitted to probate. It will be noted that in the Curtis Case there was on the margin of the will a memorandum signed by the testator—"canceled the third paragraph, June 30, 1908" —indicating an intention to limit the destruction to the paragraph destroyed. In the case under consideration we have no such written limitation, and must determine the intention of the testatrix from all the evidence in the case and the rules of law applicable thereto. The will having been found in the effects of the deceased, where it had been for a long time in her possession, it is presumed that whatever obligations were made in it were done by her; and this also applies to the copy.

Contestant contends that to work a revocation of the entire will it is not necessary to utterly destroy it, nor to tear it into small pieces, but that it may be revoked by slight tearing of the instrument. He cites Matter of Philip, 19 N. Y. Supp. 13,[1] in which lines were drawn through the signature; Probate of Clark, 1 Tuck. 445, in which the signature of the testatrix and the name of the principal legatee had pen marks drawn through them.

He also cites Heaton on Surrogates, § 141, where it is said that:

"It is not necessary in order for a will to be revoked by burning that it should be completely consumed by the fire, or for a will to be revoked by tearing that it should be completely torn to pieces, but that where the testator desired to revoke the will and threw the same into the fire and the same had been but slightly scorched, so that the handwriting is still legible, that still was a sufficient revocation."

This is evidently upon the authority of Matter of Alger, 38 Misc. Rep. 143, 146, 77 N. Y. Supp. 166, in which Surrogate Church held that codicils were revoked, one by lines drawn across all its provisions and the word "canceled" written in two places with a date in another place, the other where the first clause had various pencil marks across it and at the foot of the attestation clause was written a statement signed by the testator to the effect that the codicil was canceled.

In all these cases the intention to affect the whole instrument was manifest.

The destruction of the signature destroyed what gave effect to the whole instrument. The act of casting into the fire must indicate an intent not to destroy a part, but the whole of the instrument. Canceling all the matter, or canceling part and writing that the whole codicil was canceled, as in the Alger Case, leaves no doubt as to the intent of the testator.

But what shall be said of the intent to revoke where only a portion of the will is destroyed by tearing out and the remainder, with the signature and attestation clause intact, remains?

The real question is, what was the testator's intent in the tearing; for, if the intent was by destruction of part to destroy the whole, then the will was revoked. It is very evident that the testatrix intended to

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 64 Hun, 635.

destroy the matter torn out. Did she intend to go further and destroy the whole instrument? In the Alger Case Judge Church says:

"It has been also decided that where a seal was appended to a will, and which was unnecessary, has been torn off by the testator with the intention of revoking the same, although he has not torn the signature off, or any part of the writing of the will, that there was a sufficient tearing of the same to effect a revocation."

The case in which the decision thus referred to was made is not cited by the learned surrogate; but he evidently refers to Price v. Powell, 3 H. & N. 341, cited in Jarman on Wills (Bigelow's 6th Ed.) 150, old English star paging 115. In this case the court said that the instrument purported to be executed under seal and was published and attested as such, and, when the seal was torn off, it ceased to be the instrument which the testator purposed to execute and publish, the effect being to show that the destructive intent went to the whole instrument.

A somewhat similar case is Avery v. Pixley, 4 Mass. 460, in which a will was made under seal, the seal not being required. The court observed that it was usual to annex a seal; and, as a will might be revoked by being torn or obliterated by the testator, it might happen that a testator might tear off the seal, which he might consider as an essential part of the execution, with the express design thereby to revoke the will; but decision on this point was reserved until evidence heard.

In Moore v. De La Torre, 1 Phill. 375, the will consisted of three sheets connected by a tape, sealed by the testatrix's own seal, the same seal annexed to the will itself. The will and codicil were cut around the margin at the top and one side, so as to detach it from its frame, but no part of the writing was touched, except that the attestation clause of the codicil was cut through. In this condition they were found in the room of the testatrix after her decease, in a box in which she kept her papers. Sir John Nicol held that this must be construed as an intention to destroy the will. On appeal to the High Court of Delegates, the judgment was sustained.

Barrett, J., in Warner v. Warner's Estate, 37 Vt. 356, quotes 2 Am. Leading Cases, 689:

"All that is necessary to a revocation is an absolute revoking intention, manifested by any act, however slight in its nature, which can fairly be considered as a tearing, burning, canceling, or obliterating within the meaning of the statute of frauds, and the various legislative enactments which have been based upon it."

And the same opinion, quoted from Mr. Justice Coleridge in Reed v. Harris, 33 Eng. C. L. 57, as follows:

"The question is put whether the will must be destroyed wholly, or to what extent. It is hardly necessary to say; but there must be such an injury, with intent to revoke, as destroys the entirety of the will, because it may then be said that the instrument no longer exists as it was."

Jarman on Wills (Bigelow's 6th Ed.) p. 149, says:

"The tearing or cutting to be effectual need not be of the whole will. Tearing or cutting out that part of the will which may be said to be the princi-

pal part  *  *  *  will cause a revocation of the whole will"—citing Williams v. Jones, 7 No. Cases, 106.

In that case the first page, containing the whole trusts of the will, was detached and missing; and the court held that this was a destruction of the substance of the will and worked its revocation, as the presumption was that it was done animo revocandi.

The doctrine of all these cases seems to be that, if from the testator's act it is plain that his intent was to revoke the whole will, a slight tearing is sufficient to revoke; and the intent is a question of fact. In view of these authorities, the tearing here shown was sufficient to accomplish a revocation of the whole will, if it was so intended. What, then, was her intent? She tore out the middle of the will, all of one clause and part of another. She threw away the cover which bounds the parts together. If her act meant anything, it was at least to her intent thereby to leave herself intestate as to upward of 90 per cent. of her estate. She never attempted to give any validity to the fourth clause of the will, if that were possible, and this is a circumstance tending to indicate an intention to abandon the will. She tore her name off the copy of the alleged will which was left with it and canceled the testimonium clause on the copy. Destroying the name on the copy would not, of course, revoke the will; but it is a circumstance to be considered in gathering her intent with reference to the mutilation of the will. So far as these facts indicate any intention, they point to a desire to revoke the whole will. There is no express limitation of the cancellation to a single clause, as in the Curtis Case, and I conclude that she tore the will animo revocandi as to the whole thereof.

Having reached this conclusion, it is not necessary to pass upon the question of the jurisdiction of this court to determine the matter originally contained in the part of the will which was torn away nor the sufficiency of the evidence introduced to that end.

Probate denied.