the only persons who can be made parties are those who are subsequent incumbrancers by mortgage or otherwise."

To the same effect, see Asphalt Co. v. Arnott, 152 N. Y. 591, 46 N. E. 956; Jacobie v. Mickle, 144 N. Y. 237, 39 N. E. 66. The judgment entered upon the decision of the trial justice, sustaining the demurrer of the defendant Danforth, should be affirmed, with costs.

Interlocutory judgment affirmed, with costs, with leave to amend complaint upon payment of costs. All concur, except WARD, J., not voting.

---

KEEFE et al. v. SUPREME COUNCIL OF CATHOLIC MUT. BEN. ASS'N.

(Supreme Court, Appellate Division, Fourth Department. February 3, 1899.)

1. VITAL STATISTICS—ORIGINAL RECORD—CAUSE OF DEATH—EVIDENCE.
    The original Records of Vital Statistics, showing the cause of a person's death, have the same effect as a certified copy thereof, and are therefore admissible in evidence, under Laws 1893, c. 661, § 22, making such copy presumptive evidence of such cause.

2. INSURANCE—APPLICATION—FALSE STATEMENT—HEARSAY EVIDENCE—APPLICANT'S GOOD FAITH.
    Decedent stated, in an application for insurance, that none of his sisters had died of, or ever had, any pulmonary complaint, and that one of them had previously died of uterine trouble. In an action on the policy it was shown that she died of phthisis pulmonalis, to rebut which, witnesses were permitted to testify that certain physicians, who were alive and within the jurisdiction of the court, who had treated her, had stated that she was afflicted with female trouble, that she had herself so stated, and that such statements had been communicated to deceased. Held, that the evidence was hearsay, and admissible only to show decedent's good faith in answering the question, and could not be considered in determining the cause of the sister's death.

Appeal from trial term.

Action by Mary A. Keefe and another against the Supreme Council of the Catholic Mutual Benefit Association. From a judgment in favor of plaintiffs, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

C. J. Church, for appellant.
James M. E. O'Grady, for respondents.

FOLLETT, J. This action was begun January 16, 1897, to recover $2,000 on a certificate of membership issued by the defendant February 21, 1895, to James Keefe, payable to his wife, Mary A. Keefe, and to his daughter, Margaret M. Keefe, equally. He died December 13, 1895. The certificate was issued upon the written application of James Keefe, signed by him, and dated December 1, 1894, in which he answered certain questions, which answers are asserted by the defendant to be untrue. In his application it is stipulated that the application and the answers to the various questions therein and in the medical report should form the exclusive and only basis of the agreement between the applicant and the defendant, and that any fraudulent or untrue answers or statements should vitiate the con-

tract. Among other questions contained in the application and in the report of the medical examiner, also signed by James Keefe, are the following, the answers to which are alleged by the defendant to be false: "To what extent do you use intoxicating liquors? Answer: None. Have you ever used them to excess, or to the extent of impairing your health? Answer: No." Among other questions contained in the record is the following: "Have any of your * * * or sisters died of, or ever had, consumption * * * or any pulmonary complaint? Answer: No." He also stated that he had had one sister who died at the age of 30 years, and that the cause of her death was uterine trouble. In the application, James Keefe declared "that he is not now afflicted with any disease or disorder." The action was defended upon the ground that the answers to these questions and the declaration were false. On the trial of the action, the clerk of the town in which James Keefe died was called as a witness, and produced the "Records of Vital Statistics." The defendant then offered to show by the records that James Keefe died of tuberculosis, which was objected to by the plaintiffs, on the ground that it was incompetent and immaterial, and the objection was sustained. The Vital Statistics were kept pursuant to chapter 661 of the Laws of 1893,—the "Public Health Law." By the twenty-second section of this act it is provided that copies of the entries of the deaths and causes of deaths entered in the records, when certified to be correct, "shall be presumptive evidence in all courts and places of the facts therein stated." The objection to the evidence was not placed upon the ground that certified copies were not produced, instead of the original records. A copy of this record duly certified was competent evidence. Woolsey v. Trustees, 84 Hun, 236, 32 N. Y. Supp. 543, affirmed, 155 N. Y. 573, 50 N. E. 270; Markowitz v. Railroad Co., 12 Misc. Rep. 412, 33 N. Y. Supp. 702. A certified copy of the record being declared by the statute to be presumptive evidence, the original record has the same effect, and was admissible in evidence. Besides, the objection was not upon the ground that a duly-certified copy of the record was not produced, but the objection went to the competency of the evidence, and the court erred in sustaining the objection. A part of the Records of Vital Statistics (No. 288), relating to the cause of death of Margaret J. Keefe, the sister of James Keefe, was admitted in evidence, wherein it was stated that she died February 14, 1894, of phthisis pulmonalis, and that her attending physician was L. W. Byam. To rebut this evidence, the plaintiffs were permitted to prove by Fannie Ward, over the objection of the defendant, that Dr. Borden, a physician at one time in attendance upon Margaret J. Keefe, stated to the witness that Margaret was afflicted with a female trouble. This was hearsay. It appears by the record that the doctor was living at the time of the trial, and he should have been called, instead of proving his statements.

Patrick Keefe, a brother of James Keefe, was permitted to testify that Margaret J. Keefe was at one time treated by Dr. Smedley at a sanitarium at Auburn, who told the witness and James Keefe that Margaret was afflicted with a female trouble, and that "her liver was bad." The witness was further permitted to testify that

James Keefe told him that Margaret had told his wife that she was suffering from a female difficulty, and that his wife repeated the conversation to James Keefe. Mary A. Keefe, one of the plaintiffs, was called, and testified that Margaret told her that she was suffering from a female trouble, which information she communicated to her husband, James Keefe. The information which came to James Keefe in respect to the disease with which his sister was afflicted was competent solely as bearing upon his good faith in making the answers to the questions in the application, but it was not competent upon the question as to the disease with which she was afflicted.

The learned trial judge, in submitting the issues, instructed the jury that they might take this hearsay evidence into consideration in determining whether the sister died of consumption or of a female difficulty. There was no competent evidence in the case tending to show that Margaret J. Keefe died from a female difficulty, as stated in the application. The physicians who treated Margaret should have been called to testify in respect to the disease from which she was suffering, and the statements of the physicians, they being alive and within the jurisdiction of the court, were not competent as bearing upon the question of what disease she died. This was hearsay.

For these errors, the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.