(60 Misc. Rep. 492.)

### In re BALMFORTH'S WILL.

(Surrogate's Court, Saratoga County. September, 1908.)

1. WILLS (§ 302*)—EXECUTION—EVIDENCE.

    On an application to probate a will, one of the subscribing witnesses testified that decedent signed and published the instrument as her last will in his presence; a second witness testified that she published, but did not sign it or acknowledge her signature in his presence; and the third, that she subscribed it in his presence, but did not publish it. *Held* not to show a compliance with the statutory requirements as to its execution.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 718; Dec. Dig. § 302.*]

2. WILLS (§ 302*)—EXECUTION—ATTESTATION CLAUSE.

    Where the evidence shows that a will was not read to the witnesses, and their testimony contradicts the recitals of the attestation clause, the will cannot be admitted to probate.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 705; Dec. Dig. § 302.*]

In the matter of the probate of the will of Elizabeth W. Balmforth. Probate denied.

William J. Delaney, for petitioner.

George R. Salisbury, for Robert S. Alexander and George H. Williams.

William D. McNulty, for James L. White.

Walter C. Booth, for William R. White.

Frederick J. Winston, for Edgar G. Benedict.

Harry P. Pendrick, special guardian, for Beatrix Benedict, an infant.

OSTRANDER, S. This is a proceeding for the probate of an instrument, dated November 22, 1902, propounded as the last will and testament of Elizabeth W. Balmforth. At the time of signing this paper Mrs. Balmforth was about 88 years of age. She lived some years longer, and died on the 30th day of July, 1907, at Saratoga Springs, N. Y. The usual formal objections to probate of the paper, alleging that it was not the last will of deceased, that it was not executed, published, signed, and witnessed as required by law, and alleging that the decedent was incompetent, and that she was unduly influenced in making it, and that the third, fourth, fifth, and sixth clauses were invalid, were interposed by several next of kin and heirs at law of the deceased.

The paper in question was signed at the Hoffman House in the city of New York, while the deceased was a guest there. The subscribing witnesses were Edward A. M. Hawkins, a bellman, John Kane, captain of the bellmen, and George C. Burbank, public stenographer, all employed at said hotel. The witnesses Hawkins and Burbank agree that the paper was signed by Mrs. Balmforth in their presence, at the end thereof; but Kane did not see her sign it, and she did not acknowledge its subscription to him. As to its publication by her the following testimony was given:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The witness Hawkins testified that she sent for him while she was eating breakfast, and he went and met her in the dining room while she was eating; that she asked him if he would mind signing her will, being a witness to her will (her exact words he does not remember); that when he got time she would like to have him come to the stenographer's office; that she was getting her will made, and she wanted him to sign it as a witness; that he was to go as soon as she was ready, and he went there about 11 o'clock. She did not send for him. He watched her, and went to the office when she went in. She, Burbank, Kane, and Hawkins were there. Kane and he (Hawkins) went in together. She was waiting for it to be finished. Burbank was typewriting it. "When we went in she said nothing, except moved the leaves over to be signed. She signed it while we were there. Q. What was said to you before you signed it? A. Just asked to sign her will, consent to sign her will, and Mr. Kane and Mr. Burbank, all three, signed it." He further said that Mrs. Balmforth asked him to sign it at breakfast; that she did not ask him again to sign the will when he went into the stenographer's office, and that she did not then say a word, only to thank them; that he did not hear a word said; walked in and walked out, that was all; that she did not have the will at breakfast, but told him she was going to have a will made, and to come in and sign it; that he did not read any part of the paper, and it was not read to him.

The witness Kane testified:

"How I came to sign the will. * * * Mr. Hawkins told me that Mrs. Balmforth wished me to sign her will, and then she came around to the stenographer's room. I kept close watch on her. I went in, and she asked me to sign my name, and Mr. Burbank showed me where to sign. She says: 'John, will you be a witness to my will?' I signed my name where I was directed, and walked out about my business. Signed my name twice. She didn't pass a word of opinion about the will while I was there. She didn't acknowledge the paper in any way, except to ask me to witness it. When I went in there, Mrs. Balmforth said to me: 'Will you please witness my will?' I did not read any part of it, and it was not read to me. I was there probably 10 minutes."

Witness Burbank testified:

"I remember she came to me and asked me to draw her will, and she executed it. I recall that she asked me to witness it, and she also asked two other parties to witness it. When she came in she said she wished me to copy her will and sign it as a witness. I copied it from manuscript she furnished me. She said she requested two of the boys to witness her will. I did not hear her ask them to come, but I heard her ask them to witness her signature. She read and compared the will. She didn't read it aloud. She signed it in the presence of we three. Q. What did she say while they were there, anything at all? A. She motioned with her hand like this (indicating). She made motions toward the document with her hand; signed it and we signed it."

He further said:

"I don't recall her saying anything other than what I have testified to while the witnesses were there. Q. What did you testify to that she said, if anything, while the witnesses were there? Just think over the occurrence? A. Testified that she either asked them verbally or by motion of the hand to witness her signature. My recollection is she said, before they came, that she had asked them to come. I don't recollect whether or not she said anything to the witnesses while they were in there, other than indicating to the paper by a motion of the hand. Q. Do you recall just what and all was said while

the witnesses Mr. Kane and Mr. Hawkins were in the room? And, if so, state all she did while the witnesses were there. A. I got up and gave her my seat at the desk, and put the machine down so she could use the top of the desk, gave her a pen and a blotter, and she took the document, and I held the pages back as fast as she signed her initials at the bottom, until she glanced down every one and signed her initials, to the last page, when she signed her name."

Later, having testified that, just previous to her signing it, the witnesses were present, he was asked:

"Q. Now did she at that time say in words or in substance·that was her last will and testament? (Objection.) Q. What did she say about it? A. I can't state the language. Q. I ask the substance. A. The same day, prior to the drawing of the will, she asked me to copy it and fix it up for her—not giving the exact language. Then, when she brought the manuscript around, I copied it and proceeded as directed. Q. She during that conversation, I believe, told you that she asked Mr. Kane and Mr. Hawkins to witness her will? A. Yes. Q. After a while they came in the room? A. Yes. · Q. What, if anything, did she say, about that being her will when they came in there, in the presence of all? A. I don't recollect. She signed, and they watched her do it, and she indicated that they were also to sign, and I showed them where to sign."

He further said that the witnesses did not read any part of the will, and it was not read to them to his knowledge, and that their business was just to sign it where he indicated.

From all this testimony it is plain that, so far as the recollections of the witnesses go, there was no direct declaration by Mrs. Balmforth, at the time of the execution of the instrument, that it was her last will and testament, unless it be found in the testimony of the witness Kane that when he went into· the stenographer's room she said to him: "Will you please witness my will?". He says that both Hawkins and Burbank were present at this time. Neither of them has any recollection of this. Hawkins' version of the occurrence negatives any such declaration having been made. Burbank simply does not recollect it. Hawkins did not hear her say a word at the time they signed only possibly to thank them. It does not appear that either of the other two witnesses heard her request to Kane to "witness my will," nor that from anything she then said they understood it to be her will, though Hawkins doubtless inferred it to be such from what she had said to him in the dining room and Burbank from her directions to him concerning it and her signature of it. So far as the testimony of Hawkins goes it fails, I think, to establish the will for lack of publication. As to the witness Kane, it would require excessive refinement to hold that her request to him, "Will you please witness my will?" at practically the time it was presented for his signature, did not constitute a sufficient publication; but he did not see her sign it, and she did not acknowledge her signature to him. We come, then, to the witness Burbank. She had asked him to prepare her will, and he had done so. When she asked him to prepare it, she asked him to sign it as a witness. As soon as it was written out, she compared it and signed it, and Burbank signed as a witness. I think this was a substantial compliance with the requirement of the statute as to a publication, inasmuch as she had made known to him the nature of the instrument, calling it her will; and

his information may be considered as continuous, extended down to the very act of signing it.

We have, then, as a result, that the deceased, as to Burbank, subscribed and published the instrument as her will; as to Kane, published it, but failed to subscribe it or to acknowledge her subscription of it; and, as to Hawkins, subscribed it, but failed to publish it. No probative force can be given to the attestation clause, for the reason that it expressly appears that it was not read to either Kane or Hawkins, and the testimony given by the witnesses contradicts the recitals of the clause. The witnesses were all inexperienced in the execution of wills, and no counsel was present. It follows that the statutory requirements as to formal execution of a will are not shown by any two witnesses to have been complied with, and probate should be denied. This conclusion renders any discussion of other objections raised unnecessary.

Let findings and a decree be prepared accordingly.

Decreed accordingly.