(73 Misc. Rep. 148.)

## In re FRANCIS' WILL.

### (Surrogate's Court, New York County. July, 1911.)

1. WITNESSES (§ 202*)—COMPETENCY—CONFIDENTIAL COMMUNICATIONS—ATTORNEY AND CLIENT.

    In proceedings upon the probate of a will, an attorney and counselor at law who drew a codicil and was present at its execution, but is not one of the attesting witnesses, is incompetent to testify in relation thereto, under Code Civ. Proc. § 835, providing that an attorney or counselor at law shall not be allowed to disclose a communication made by his client to him in the course of his professional employment.

    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 756, 757; Dec. Dig. § 202.*]

2. WILLS (§ 289*)—PROBATE—PRESUMPTIONS.

    The presence of an attorney at the execution of a codicil to a will raises a presumption of the regularity of the execution.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 653–661; Dec. Dig. § 289.*]

3. WILLS (§ 292*)—PROBATE—ADMISSIBILITY OF EVIDENCE.

    In proceedings to probate a will, it is competent for the objectors to introduce any proof which shows that the papers propounded are not valid and subsisting testamentary instruments.

    [Ed. Note.—For other cases, see Wills, Dec. Dig. § 292.*]

4. WILLS (§ 293*)—PROBATE—EVIDENCE.

    Where a paper presented for probate bears on its face marks which tend to impair it, the apparent infirmity must be considered on the affirmative offer of probate.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 666–678; Dec. Dig. § 293.*]

5. WILLS (§ 290*)—REVOCATION—PRESUMPTIONS.

    Where an alleged will was last in the custody of the supposed testator, mutilation thereof sufficient to amount to a revocation will be presumed to have been caused by the testator for the purpose of revoking it.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 663; Dec. Dig. § 290.*]

6. WILLS (§ 171*)—REVOCATION—EXCISION OF SIGNATURE.

    The testator's act in wholly cutting out his signature from a will indicates an intention to revoke it.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 451; Dec. Dig. § 171.*]

7. WILLS (§ 195*)—REVOCATION—CODICIL.

    The revocation of a will revokes the codicil, where the two are necessarily interdependent, or so involved as to be incapable of separate existence.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 491; Dec. Dig. § 195.*]

8. WILLS (§ 206*)—PROBATE—ADMISSION OF CODICIL TO PROBATE.

    That a testamentary writing which has been executed according to the statute of wills animo testandi is termed a codicil does not render it inadmissible to probate as a will, unless its provisions are so involved with those of the will as to render it incapable of separate existence.

    [Ed. Note.—For other cases, see Wills, Dec. Dig. § 206.*]

In the matter of proving the last will and testament of Isaac Pickford Francis. Probate denied.

William D. Peck (Benjamin H. Newell, on the brief), for proponent.

Franklin A. Coles, for contestant Charles P. Bennett as ancillary guardian.

James P. Davenport, for contestants Thomas Leary, William H. Navarro, Effie N. Webb, and Rachel V. Place.

Walter H. Bunn, for Etta L. Shults, beneficiary under will.

Alexander I. Rorke, special guardian for infants Gerald Webb Bennett and Margaret Braislin Bennett, contestants.

FOWLER, S. The testimony was taken in this cause before my predecessor. In deciding the merits of a controversy, a judicial officer who has not heard the testimony, or the oral arguments of counsel, is always at some disadvantage, augmented in this cause by a certain vague and often inconclusive character of the depositions. In order that any invalidity in my conclusions may be the more readily detected by those concerned, if to their disadvantage, I deem it my duty to make a brief précis of the facts which I esteem established on the hearing, as my conclusions are predicated of such facts.

Probate of the papers propounded is petitioned for by the executor named in the later testamentary writing, designated the "codicil." Objections to such probate were filed by the ancillary guardian of infant grandchildren of Isaac Pickford Francis, the alleged testator. Appearances and objections to probate were also filed by other persons in interest; it appearing that the deceased was in his lifetime donee or grantee of a power of appointment, the execution of which by his last will and testament defeated certain interests vesting in possession in such persons on the failure of said Isaac Pickford Francis to so execute such power of appointment. Mrs. Ella L. Shults, a legatee under the paper propounded as a will, appeared on the hearing by separate counsel.

On the hearing, some objection to the order of proving the papers presented for probate seems to have been taken by the counsel for contestants; it apparently being claimed that proponents must first establish the factum of the will before proceeding to the taking of proofs bearing on the execution of the codicil. The late surrogate deemed the order of proof immaterial, and testimony was accordingly first offered by proponents bearing on the execution of a paper writing purporting to be a codicil to the will of Isaac Pickford Francis, viz.:

"I, Isaac Pickford Francis, do hereby make, publish and declare the following as a Codicil to my Last Will and Testament, executed by me on the 25th day of January, 1898.

"First. I hereby revoke the legacy given to Asahel S. Levy, now deceased, in the second paragraph of my said Will, and I hereby appoint Mrs. Jennie Schenck Whitehouse, daughter of Mr. and Mrs. Franklin Schenck, of 182 Van Buren Street, Borough of Brooklyn, City of New York, and Mr. Walter Lee Crow, son of Mrs. Mary E. Crow, of 13 East 126th Street, New York City, to receive the one-third of said remainder which said Asahel S. Levy was appointed to receive by the second paragraph of my said Will, the said one-third to be divided equally between Mrs. Jennie Schenck Whitehouse and Walter Lee Crow, one-half thereof to each.

"Second. I hereby appoint my friend, Mr. Walter Lee Crow of 13 East 126th Street, New York City, as executor of my Last Will and Testament, and under this my Codicil thereto, in place and stead of William K. O'Brien, who is now deceased.

"All of the other provisions of my said Last Will and Testament, executed by me on the 25th day of January, 1898, I hereby re-affirm, re-publish and again declare to be, together with this Codicil, my Last Will and Testament.

"In Witness Whereof I have hereunto set my hand and seal this seventeenth day of March, 1899.                    Isaac P. Francis. [Seal.]

"The foregoing instrument was on the day of the date thereof signed, sealed, published and declared by the above named Isaac Pickford Francis as and to be a Codicil to his Last Will and Testament dated the 25th day of January, 1898, in our presence and in the presence of each of us, and we in his presence and in the presence of each other, at his request, subscribed our names thereto as witnesses, this attestation clause having first been read over by each of us.

"M. E. Merrifield, Continental Hotel, N. Y., N. Y.
"Frank Dow, Continental Hotel, New York, N. Y."

At the time the codicil was executed, it was fastened securely by a tape to a paper writing, purporting to be the will of Isaac Pickford Francis, the ends of such tape. being imbedded in the waxen seal, impressed opposite the signature of Isaac Pickford Francis, the alleged maker of the codicil. The seal on the codicil seems to have been formed by the use of a signet ring, cut as an intaglio and bearing, I think, the initials .I. P. F. "That it was an expensive seal is apparent from the impression on the wax, but no testimony was offered to identify the seal. That it was Mr. Francis's own seal is, I think, evident. But no positive evidence is given as to the time when the seal was affixed to the codicil. The testimony of Mr. Morgan, the lawyer who prepared the codicil, is to the effect that the will and codicil were securely fastened together and placed under the same cover; the tape so fastening them together being led with art under, and secured by, the seal to the codicil, when the latter instrument was executed. That Mr. Morgan's testimony is accurate is apparent from the condition of the papers propounded, provided no subsequent change was made by any one after the execution of the alleged codicil, and of this there is no proof. At the time the codicil was executed the paper propounded as a will was intact, uncanceled, and unrevoked, and apparently it had been duly executed as a will in conformity with the wills act (Consol. Laws 1909, c. 13), of this state. Mr. Morgan swears that the old will was intact at the time the codicil was executed, and that it then was not mutilated or canceled in any way, and he was present at the celebration of all the formalities attending the execution of the codicil. He it was who had fastened together the will and the codicil. This is certainly very good evidence. It was taken without objection, and I think established that the instrument purporting to be the will of Isaac Pickford Francis was actually fastened to the codicil at the moment the latter was executed or attemped to be executed.

Were it not for the condition of the paper propounded as a will, hereafter considered by the surrogate, the testimony offered to prove the execution of the codicil is sufficient prima facie to establish that writing as a testamentary instrument under the statute of wills. Mr.

Merrifield, one of the attesting witnesses to the codicil, is alive and gave testimony in support of the execution of the codicil. The other attesting witness to the codicil, Frank Dow, as it is claimed, is since deceased. A certificate of the death of Frank Dow, made by the department of health, bureau of vital statistics, and sealed with the seal of the department of health, was allowed by the surrogate to be given in evidence, over an objection that the proponent must first establish the identity of the deceased and the attesting witness. Certainly the legal presumption is that the death certificate refers to the same person, and the objectors offered no testimony to the contrary.

The question of the regularity of the proof of the death of Mr. Dow is not before me, but I cannot forbear referring to the statutes which seem to afford some authority for the introduction of the certificate and record of his death. Section 5 of the public health law (Consol. Laws, 1909, c. 45) provides for the bureau of vital statistics in the state department of health, and that a copy of any record in the state department of health, duly certified by the commissioner to be a true copy thereof, shall be presumptive evidence in all courts and places of the facts therein stated. Section 933 of the Code of Civil Procedure seems to authorize the deputy commissioner to make such certificate. Public Officers Law (Consol. Laws 1909, c. 47) §§ 9, 66. The certificate in this case seems to comply with the law. Code Civ. Proc. § 957. It states that the deputy commissioner has compared the copy of the certificate of death of Frank Dow with the original certificate as filed in the bureau of vital statistics of the state department of health, and that the same is a true copy and a transcript therefrom, and of the whole thereof. Keefe v. Supreme Council, 37 App. Div. 276, 278, 55 N. Y. Supp. 827; City of New York v. Vanderveer, 91 App. Div. 303, 309, 86 N. Y. Supp. 659. Under the circumstances, it would seem that the death of Mr. Dow, the subscribing witness, was sufficiently established in the absence of proof of his existence.

The handwriting of the deceased attesting witness to the codicil was amply proved. Thus we have to prove the codicil, the testimony of the subscribing witness who was alive at the time of the probate, also the testimony of the lawyer in actual attendance at the execution of the will, and a full certificate of attestation of the codicil signed by Mr. Dow, the deceased attesting witness.

[1] The testimony of the lawyer (not an attesting witness) who drafted the codicil and was in attendance at the celebration of the formalities required by the statute of wills for the formal execution of that instrument was taken before my predecessor without objection of counsel. As an original proposition I might have ventured to think such evidence was competent. The celebration of the formalities required for the execution of a will I should have taken to be public, and not a private act. The execution of a will is open; and by its very nature it is neither private nor confidential. It is an act in which the state has the supreme interest, and the witnesses should not be immune from disclosing a noncompliance with a public statute of great significance. "Testamenti factio, non privati, sed publici juris

est," was the rule of the civil law, adopted by the ecclesiastical courts of England, where such testimony was never held confidential or incompetent. Such was once the rule of this jurisdiction. But the construction formally placed upon section 835 of the Code of Civil Procedure directed wholly to confidential communications and advice leaves me, I think, no alternative but to reject' the consideration of such testimony. Matter of Cunnion, 201 N. Y. 123, 94 N. E. 648.

[2] But while I must disregard the testimony of the lawyer relating to such execution, as it was taken contrary to the existing law, yet I may take notice of his actual presence and avail myself of the established presumption which such presence affords. Had Mr. Morgan not been called to the stand, his very presence at the execution of the codicil would afford some presumption of its compliance with the statute of wills. Matter of Cottrell, 95 N. Y. 339; Worden v. Van Gieson, 6 Dem. Sur. 238, 239; Matter of Walker, 67 Misc. Rep. 6, 124 N. Y. Supp. 615; Matter of Nelson, 141 N. Y. 152, 157, 36 N. E. 3. So the certificate of attestation, being full and complete, subsigned by the attesting witnesses and attached to the codicil, is entitled to be considered as affording a presumption of regularity in the execution of the codicil. Matter of Cottrell, 95 N. Y. 338, 339; Matter of Balmforth, 60 Misc. Rep. 492, 113 N. Y. Supp. 934.

That the paper propounded as a will and bearing date the 25th day of January, 1898, was originally executed in compliance with the statute of wills, is, I think, made out in the absence of proof to the contrary. Both of the attesting witnesses were dead at the time of the offer to probate the will, but their death and their signatures to the certificate of attestation annexed to the will were sufficiently proved on the hearing. The attestation clause or certificate, stating that all formalities required by the statute of wills were complied with, is under such circumstances sufficient prima facie evidence that the will was executed in due form. Brinckerhoff v. Remsen, 8 Paige, 488; Matter of Sizer, 129 App. Div. 7, 10, 113 N. Y. Supp. 210; Matter of Abel, 136 App. Div. 788, 792, 121 N. Y. Supp. 452.

In an ordinary cause, when the original will is duly executed under the statute of wills then in force, the codicil operates to republish such will (Loveless on Wills, 373; Brown v. Clark, 77 N. Y. 369), although, at present, it is intimated that a codicil may not so operate, if the will it refers to was not duly executed under the existing statute of wills. Matter of Carll, 38 Misc. Rep. 471, 77 N. Y. Supp. 1036; Matter of Emmons, 110 App. Div. 701, 96 N. Y. Supp. 506. Upon the latter point of law I cannot now express an opinion, as it is not before me for adjudication, at this time. Much might be said on it. See Matter of Weston, 60 Misc. Rep. 275, 113 N. Y. Supp. 619, affirmed 131 App. Div. 901, 115 N. Y. Supp. 1149; Booth v. Baptist Church, 126 N. Y. 247, 248, 28 N. E. 238.

Had the paper called the "will" been in the same condition at the time it was offered for probate that it was in when the paper propounded as a codicil was executed, both instruments would now, for the reasons before stated, be entitled to be probated. But the will was not in its original state when both of such alleged testamentary pa-

pers were filed for probate and this cause brought on for hearing. Hence a question of revocation of the will is presented to the surrogate, together with a contention on the part of the objectors to the probate that, the will being revoked, the codicil has no independent existence, and that standing by itself the codicil is not probative. Such are the real questions which the surrogate must proceed to consider in this cause.

[3] In resisting the probate, it is competent upon general principles for the objectors to introduce any proof which shows that the papers propounded are not valid and subsisting testamentary instruments. Nelson v. McGiffert, 3 Barb. Ch. 158, 49 Am. Dec. 170. As a will is ambulatory until the death of the testator, it is always subject to revocation until the demise of the intending testator puts a natural end to animus revocandi, which is, in all cases, essential to the act of revocation.

[4] When a paper presented for probate bears upon its face marks which tend to impair it, the apparent infirmity must be considered by the surrogate on the affirmative offer to probate. The alleged testamentary writing is offered subject to such infirmitiy, and, as it is said in such a case, "the paper speaks for itself." In Goods of Perry, 4 Notes Cas. Ecc. Cts. 402, 404. The surrogate on a probate proceeding is bound to take notice of defects, and also of a noncompliance with the statute of wills, apparent on the face of papers propounded. An inspection of documents presented to the surrogate for his action is obligatory. Such defects are then a species of real evidence, competent in any tribunal under certain circumstances, and especially competent in the courts of the surrogates where the proceeding to probate is on the paper itself. Neither courts nor juries can be expected to close their eyes to what is apparent to them on an inspection during a trial. Good sense precludes their so doing as contrary to human action and general experience. It is, I think, the rule that defects apparent on the face of a paper propounded as a will must always be taken note of on a probate, and that the surrogate is bound to inquire in the first instance concerning such apparent defects. Matter of Wilcox, 131 N. Y. 610, 30 N. E. 101; Matter of Barber, 92 Hun, 489, 37 N. Y. Supp. 235; Matter of Gibson, 128 App. Div. 769, 113 N. Y. Supp. 266; Beaty v. Beaty, 1 Add. Ecc. Rep. 154; Matter of Clark, 1 Tuck. 445, 460. To be sure such defects may be explained away by competent evidence, but, unexplained, they must be considered by the surrogate quantum valeat, and before any probate can be decreed. Code Civ. Proc. § 2622.

[5] We come now to the consideration of the real question in this cause—the revocation of the paper propounded as a will, and its effect on the codicil. At the time the typewritten papers propounded as a will and codicil were filed and offered for probate, such "will" was not in the condition it was in when executed, or immediately after execution; nor was it even in the condition it was in when the paper propounded as a codicil was executed. The signature of Isaac Pickford Francis had since then been cut out of the so-called will, with the exception of the first three letters of such name. Blue pencil

lines had also been drawn diagonally across the first 12 lines of such paper, beginning with the words, "This is the Last Will and Testament of me, Isaac Pickford Francis of the City and County of New York, New York State." A few words in the body of the alleged will were wholly missing, owing to the excision of the signature on the reverse side of the sheet. Finally, on the last sheet of this paper ·called the will, were written just above the clause called the "in testimonium," and across the clause appointing executors, the following words in blue pencil, viz.: "Canceled by I. P. Francis." The paper annexed to this will and termed the "codicil" was, however, intact at the probate and in the same condition it was in immediately after execution. It had not been canceled, cut, or disturbed in any way by any one.

The uncontradicted testimony taken at the hearing discloses that, after the execution of the codicil, the two testamentary papers, united together as stated above, and respectively termed the "will" and the "codicil," were taken away by Isaac Pickford Francis himself. Thus we have the papers traced into the possession of the testator himself. It is in evidence that they were then intact, uncanceled, and unaltered. It seems that a copy of the same was sent to Mrs. Shults, one of the legatees, a fact quite unimportant to the issue. It appears that the original testamentary instruments may have been placed by Mr. Francis in a blue envelope and sealed five times with his private seal before mentioned. This envelope was indorsed as follows:

"Last Will and Testament of Isaac P. Francis, placed in the care of Mrs. Mary E. Crow of No. 13 East 126th St. (Harlem) New York City, by I. P. Francis March 20, 1899."

The handwriting on this envelope was proved to be that of Mr. Francis himself. That the alleged will and codicil were actually contained in the envelope is only presumptive. If they were not, they presumptively remained in the custody of Mr. Francis himself, and this is the important point. The envelope in question on the death of Mrs. Crow, the depositary, was found in her safe deposit box, sealed and unopened, and by her son it was handed sealed to Mr. Francis, the maker of the testamentary papers propounded. On the death of Mr. Francis, the papers propounded were in any event discovered among his effects, the envelope opened at the end, and the papers themselves in the condition described by the surrogate. In that condition they were filed and propounded as the will and the codicil of Isaac Pickford Francis. There is no other proof besides that already stated that the cancellation, destruction, or mutilation described was the act of Mr. Francis himself. What then is the presumption and effect of the present condition of the instrument termed the will; they having been traced intact into the custody of Mr. Francis?

The testamentary papers presented as a will and codicil for probate, being last in the custody of Mr. Francis himself, are to be presumed to have been altered by him animo revocandi, and by no one else. Matter of Hopkins, 172 N. Y. 360, 363, 65 N. E. 173, 65 L. R. A. 95, 92 Am. St. Rep. 746; Matter of Clark, 1 Tuck. 445, 453, and cases there cited; Matter of Brookman, 11 Misc. Rep. 675, 33

N. Y. Supp. 575; Matter of Miller, 51 Misc. Rep. 156, 100 N. Y. Supp. 849. A not dissimilar principle is announced in a late case. Matter of Cunnion, 201 N. Y. 123, 126, 94 N. E. 648.

The English rule, prior at least to the statute (1 Vict. c. 37), is consonant with that stated as prevailing here under the present statute of wills. In Hare v. Hasmy, etc., Lord Chancellor Eldon said:

> "According to all principle, if a paper, canceled and the seal cut off or name erased is found in a fast-locked place of the testator, the prima facie inference from that is, not that the testator meant it should continue to be his will, but that the testator was the person that did the act himself, which is found to be evidenced by the state of the paper found in his fast-locked closet." 5 Eng. Ecc. 70.

And see Lambell v. Lambell, 3 Hagg. 568; Williams v. Jones, 7 Notes Cas. Ecc. Cts. 106, 111, to the same purport.

Is there anything in our present statute of wills which alters this presumption or deprives it of force in this cause? I think not. Such, then, being the presumption to be applied in the absence of any proof that the alterations in the paper writing propounded as a will were made by any other than Mr. Francis, what then is the legal effect of the changes described and to be taken as made by Mr. Francis himself subsequently to the execution of the codicil? That some change in his testamentary dispositions was contemplated by Mr. Francis is apparent. Was the change effectual for any purpose under the statute of wills? The present statute of wills preserved without great alteration most provisions of the ancient statute of wills long in force in this state. Robins v. Coryell, 27 Barb. 556. In point of fact the law of this state often better expresses the ancient law of English-speaking peoples than does the modern law of England, where statutes have altered more profoundly this fundamental law. The old statute of wills in force in this state, like the old statute of frauds on which it was founded, contemplated a revocation of a will by the testator's act of burning, canceling, tearing, or obliterating the same. 1 R. L. of 1813, § 3, p. 365. Under the old statute of wills, revocation by the testator's destruction or other acts ejusdem generis operated as a revocation. See 1 Jarman on Wills (4th Ed.) 129 et seq. In England the Victorian act of 1837 instituted changes in the law of revocation of a nature more profound than even those instituted in this state by the Revised Statutes of 1830. The Revised Statutes in respect of express revocations made no substantial changes in the law. The changes instituted by the revisers of 1830 related to implied revocations.

[6] It seems to the surrogate that under the decisions on the present statute of wills of this state the act of Mr. Francis in cutting out his signature from the will of January, 1898, operated as a revocation of that instrument under the existing statute of wills. Matter of Miller, 51 Misc. Rep. 156, 100 N. Y. Supp. 849; Matter of Clark, 1 Tuck. 445; Matter of Brookman, 11 Misc. Rep. 675, 33 N. Y. Supp. 575. The total excision of the signature to the will by one who must, in this cause, be taken to be the testator himself, indicates an intention on his part to revoke the will. Such a conclusion is the

only one consistent with a statute which tolerates revocation of a will by the testator's cancellation, obliteration, or destruction of the instrument. A cutting out of the signature of the maker of a note by the maker of such note ends the currency of the note. The note can have no further legal inception. Is there, any difference in the abstract between such a writing and any other inceptive instrument, unless the statute of wills dictates to the contrary? If there is, it is not apparent to the surrogate. Such being the surrogate's conclusion on this point, it is unnecessary to consider the effect of the blue pencil cancellation and the penciled writing before mentioned.

[7] Having reached the conclusion that the will was revoked by the exclusion of the signature, we must proceed to consider whether such revocation has the necessary legal effect of revoking the codicil annexed to the earlier testamentary writing independently revoked. On a question of revocation the testator must be assumed to intend only the necessary consequences of his act of revocation. Now I take it that the express revocation of an earlier testamentary writing does not necessarily work a revocation of one of later date, if the latter is an independent instrument. Mr. Francis had it in his power to cut out also the signature to the codicil. He did not do so. What does this omission intend? It would seem, in any event, that such omission on his part denotes at least that the testator intended to contradistinguish the codicil from the will and to leave the legal effect of his act on the will to have its ordinary legal consequences on the codicil. But what are those consequences?

This question on a similar statute has been most fully considered in the jurisdiction which is the first authentic exemplar of our own, and it is held there that the solution of such questions depends upon the contents of the will and the codicil. If they are necessarily interdependent or so interinvolved as to be incapable of separate existence, the revocation of the will ipso facto revokes the codicil, otherwise not. Medlycott v. Assheton, 2 Add. Ecc. 229; Tagart v. Hooper, 1 Court. Ecc. 289. It would seem to the surrogate that so plain a proposition needs no citation of particular authority. Just as there are some formulæ which demonstrate themselves, so there are propositions so evident that their mere statement demonstrates and concludes their truth. I will not pursue further so plain a principle.

[8] But it is urged on me that it has been held by the surrogate for Kings county that a codicil never has an independent existence as a testamentary disposition, and that, where a will has been revoked, an instrument purporting to be a codicil to such will is not probative. Matter of Nokes, 71 Misc. Rep. 382, 383, 130 N. Y. Supp. 187. On an examination of that decision I do not find warrant for so extensive an assertion. The learned surrogate for Kings county distinctly states in substance in his opinion that it is conceivable that an instrument called a codicil may under some circumstances be an independent and self-sufficient will. Upon the facts before him, he found that the particular codicil offered to him for probate had no such independent existence. This is all I make out of that case.

That a "codicil" may now, under some circumstances, be separately

probated as an independent testamentary instrument under the existing statute of wills of this state, I entertain no doubt. The mere name of "codicil" has no deterrent effect on its probative quality. Any writing may be a will if executed pursuant to the statute of wills animo testandi. I lately so held in the case of a mere letter, which the exigency of a precarious human existence compelled the testatrix to convert into her will. So any supplemental or posterior writing, if executed pursuant to the statute of wills animo testandi, continues to be a codicil. "Will" and "codicil" are ancient terms of the great system of jurisprudence which is binding in its entirety on the surrogates. The meaning of such terms is to be found in the same body of law, needless at this time, to define in its content or extent. The statute of wills contemplates the existence and employment of "codicils" (2 R. S. p. 68, § 71, now section 2, Decedent Estate Law [Consol. Laws 1909, c. 13]) as does the present "Surrogate's Law" (Code Civ. Proc. § 2514, subd. 4). This is in conformity with the old law of wills (1 R. L. of 1813, 368, § 20), embracing the statute of wills (32 Hen. VIII) and the statute of frauds (29 Car. II), both once in force in New York. I find no warrant in the existing law of New York for the statement that a testamentary writing, executed pursuant to the statute of wills animo testandi, is not independently probative because it is termed a codicil or is in fact a codicil.

This brings us to the remaining question in this cause. Is the codicil here presented for probate so independent of the will, found to be revoked, as to entitle such codicil to probate as an independent, dispositive testamentary paper? This inquiry demands that the surrogate shall look into the contents of the rejected will and the offered codicil, and this the surrogate has power to do before probate, as it is an incident of his probative jurisdiction. Upon a careful examination I find the provisions of the will and codicil are so complicated with and dependent upon each other as to have no separate and independent existence. It is consequently found, under the circumstances of this cause, that the revocation of the will ipso facto revoked the codicil. My sentence is that the papers presented for probate were both revoked by the testator, and that probate to them both must be denied.

As Mr. Francis appears from the record to have left grandchildren who are not mentioned in either of the papers propounded as his will by those who, if I do not err on this immaterial point, were strangers in blood, the sentence, which for the reasons stated the surrogate is constrained to pronounce, accords, not only with the law, but most probably with right and justice.

Let findings and decree in accordance herewith be presented to me for my signature.

Decreed accordingly.