executor of Joseph Horwitz, for the nominal consideration of $1. The account discloses that the deceased executor invested in all in these premises the sum of $12,665.43. In the absence of special authority in the will, an executor may invest only in United States or state bonds, in loans on real estate, and in the obligations of a city of New York state issued pursuant to law. Laws of 1897, c. 417, § 9; King v. Talbot, 40 N. Y. 76.

The investment by the executor in the real estate owned by his wife was in violation of the express terms of the will. The accounting administratrix will therefore be surcharged with the sum of $12,665.43 (Matter of Fithian, 44 Hun, 457), and with interest on that sum at the rate paid by savings banks from the 19th of November, 1909.

Settle decree accordingly.

---

(90 Misc. Rep. 216)

### In re HALL'S WILL.

(Surrogate's Court, Clinton County. April, 1915.)

1. WILLS ⬥⟹309—PROBATE—QUESTIONS INVOLVED.
    Where no objections are filed to the probate of a will, the only question involved is the sufficiency of the proof to establish the will.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 735–737; Dec. Dig. ⬥⟹309.]

2. EVIDENCE ⬥⟹334—SUBSCRIBING WITNESSES—PROOF OF DEATH—CERTIFICATES.
    Under Code Civ. Proc. § 953, relative to the admission in evidence of a copy of a record or other judicial proceeding, certificates of the death of each of the subscribing witnesses to a will, certified from the department of health, are competent evidence of the death of the persons named in the certificates, in a proceeding to have the will admitted to probate.

    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 436, 1266–1272; Dec. Dig. ⬥⟹334.]

3. WITNESSES ⬥⟹206—COMPETENCY—CONFIDENTIAL COMMUNICATION—ATTORNEY AND CLIENT.
    In a proceeding instituted in 1915 for the probate of a will, an attorney's testimony that about 1882 decedent and proponent showed the will to him, that decedent declared that it was his will and inquired if it was correctly drawn, and that thereupon the witness drew a similar will for proponent in favor of decedent, was properly admitted on the theory that the communication was not confidential, owing to the fact that two persons other than the attorney were present, and that the present controversy was between one client and the person representing the interest of the other.

    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 761, 764, 765; Dec. Dig. ⬥⟹206.]

4. WILLS ⬥⟹384—PROBATE—HARMLESS ERROR—ADMISSION OF EVIDENCE.
    The admission of certain evidence to establish the validity of a will offered for probate, if error, was harmless, where proponent's other evidence established a prima facie case for the probate of the will.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 855–858; Dec. Dig. ⬥⟹384.]

---

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. EVIDENCE ⊜⟹372—ANCIENT DOCUMENTS—SUBSCRIBING WITNESSES—PRE-
SUMPTION OF DEATH.

Under the rule applicable to ancient documents, the subscribing wit-
nesses to a will, executed for more than 30 years and bearing a complete
attestation clause, are presumed to be dead.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627;
Dec. Dig. ⊜⟹372.]

Proceeding on the probate of the will of Edward Hall, deceased.
Probate decreed.

Riley & Gordon, of Plattsburg, for proponent.

O. B. Brewster, of Elizabethtown (Patrick J. Tierney, of Platts-
burgh, of counsel), for heir.

BOIRE, S. [1] This is a proceeding for the probate of the will of
the late Edward Hall, who died July 14, 1914, survived only by his
widow and a brother. The widow presents for probate a will dated
April 17, 1880, wherein she is named as the sole devisee and legatee,
as well as executrix. The brother of the deceased appeared in the
proceeding and examined the witnesses offered by the proponent, took
certain exceptions to the evidence introduced, and at the close of the
testimony made a motion to strike out part of the evidence received,
and also asked for the appointment of an administrator on the ground
that there was no will. The brother, however, specifically avoided
filing any objections. With the record in this state, I consider that
there is no contest to the probate of the will, and the only question
involved is as to the sufficiency of the proof to establish the will.

[2] The instrument offered for probate purports to be witnessed
by William H. Sisson and Amelia Sisson, neither of whom is produced
in this proceeding, and the absence of the attesting witnesses has
been the cause of the introduction of common-law proof for the pur-
pose of establishing the will. This proof has met with the objection
of the deceased's brother. Other evidence objected to consisted of two
certificates of death, one of William H. Sisson and the other of Amelia
Sisson, certified from the state department of health. The reception
in evidence of these certificates was objected to "on the ground that
they were incompetent, not properly authenticated, immaterial, irrel-
evant, not properly connected with the deceased witnesses, and not
proper proof of death." A review of the evidence and the selection
of the competent evidence seem necessary at this time in order to pass
on the question presented. I think that the objections just mentioned
were untenable. These certificates are made evidence by statute. Code
Civ. Proc. § 933. The Public Health Law (Consol. Laws, c. 45)
provides for the keeping of the records, and I see no objection to the
form of the certificates. A case directly in point is Matter of Francis,
73 Misc. Rep. 148, 132 N. Y. Supp. 695, in which Judge Fowler ad-
mitted just such proof, apparently on the authority of Keefe v. Su-
preme Council, 37 App. Div. 276, 55 N. Y. Supp. 827.

My own idea, however, is that this evidence is competent and proper
on another theory, one fairer to a contesting party and more in accord
with the long-established rules of evidence. It will be observed that

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

these certificates were not offered to prove a fact directly in issue. The proponent offered them simply to prove the death of witnesses to the instrument, and not in any way to establish the main point at issue, to wit, the factum of the will; so that the contested proofs were offered only for the purpose of excusing the proponent from the production of one class of evidence and to permit her to prove part of her case by secondary evidence. This evidence did not in any way prove the proponent's case. It simply permitted her to prove her case in a little different way than would ordinarily be required of her. In other words, it was a collateral and preliminary matter to the real case. For these reasons I consider that we may disregard the criticisms of Keefe v. Supreme Council and the apparently conflicting doctrine advanced in Davis v. Supreme Lodge, 165 N. Y. 159, 58 N. E. 891; and in Buffalo Loan, T. & S. D. Co. v. Knights Templars, 126 N. Y. 450, 27 N. E. 942, 22 Am. St. Rep. 839; as these cases all dealt with the competency of health statistics on questions directly in issue.

I think, also, that there was plenty of evidence to identify the deceased mentioned in the certificates with the witnesses, among other things, like initials, corresponding age, same occupation, etc. This is true, particularly, in view of the fact that this is a collateral matter, and no proof is offered in dispute of the facts alleged.

[3] The next evidence strenuously objected to was the testimony of Smith M. Weed, an attorney at law, who was permitted to testify that about 1882 or 1883 the deceased and the proponent visited his office, showed him the will here offered for probate, and the deceased then said that this instrument was his will and inquired if it was correctly drawn; that the witness thereupon drew a similar will for the proponent in favor of the deceased. This raises a very nice point relative to the prohibition of attorneys from testifying to communications to or by clients. The evidence was admitted on the theory that the communication was not confidential, owing to the fact that two persons were present and that the present controversy is between the two clients, or rather between one client and the person representing the interest of the second client (if, in fact, they were both clients). Whiting v. Barney, 30 N. Y. 330, 86 Am. Dec. 385; Doheny v. Lacy, 168 N. Y. 213, 61 N. E. 255, and cases therein cited.

I am still inclined to believe that the evidence was properly admitted. Under the doctrine sustained in the cases just cited it seems clear that, were this contest between the original clients over a disputed deed executed under the circumstances recited, there would seem to be no room for doubt as to the competency of the attorney's testimony and I can see no distinction between such a controversy and the one under consideration, where the heir is a party only through his deceased brother. Were this question in doubt, I am strongly of the opinion that the proponent would deserve the leniency of the law, in view of the milder and more flexible rule governing the testimony of attorneys at the time the communication actually transpired, to wit, in 1882 or 1883; for, while I doubt that the proponent has any vested right to the benefit of the rules of evidence existing at the time this instrument

was made, yet it would seem unjust to totally ignore the possibility that the parties may have been influenced by the then existing law in permitting the instrument to remain without additional evidentiary support.

[4] I have discussed the foregoing questions because they are presented by the evidence offered and received in evidence. However, to my mind it is unnecessary, in order to establish the validity of this will, to look to any of the evidence objected to, as it seems to me that by totally ignoring this evidence the proponent has established a prima facie case for the probate of the will, and that is all that is necessary in an uncontested case.

The proof shows that the deceased was a civil engineer, actively engaged in his work at the time the will is dated, and that the witnesses were an accountant cashier and his wife, temporarily residing at the same place at the time in question. The deceased and his wife, the proponent, have no children. The will comes from the custody of the widow, who is also its sole beneficiary and executrix. There is nothing in the appearance of the instrument to arouse suspicion; it bears the marks of age and exhibits an honest face; it bears a full and complete attestation clause. The signature of the testator was proven satisfactorily. The instrument having passed muster on the score of (1) custody (the executrix and beneficiary was a proper custodian); (2) appearance; and (3) age, to wit, more than 30 years—it would seem to me that under the rule applicable to ancient documents the witnesses are presumed to be dead, and very little evidence, if any, in addition to that already mentioned, is necessary to establish it as a will; but, having proven the handwriting of the witnesses, I can see no objection to the probate of the will, even though we should not consider any of the evidence objected to. Jackson v. Laroway, 3 Johns. Cas. 283; Clark v. Owens, 18 N. Y. 434; Fetherly v. Waggoner, 11 Wend. 603; Northrop v. Wright, 24 Wend. 221; Willson v. Betts, 4 Den. 201; Burhans v. Blanshan, 3 Johns. 292, 3 Am. Dec. 485; Jackson v. Luquere, 5 Cow. 221; Wigm. Ev. § 1311, p. 2137.

[5] While a controversy exists between the various authorities above cited on some features of ancient documents, they all are based firmly on the theory that a document 30 years old is presumed to be without living witnesses to its execution. This particular phase of the doctrine of ancient documents, so far as I know, has never been abridged by statute, or even criticised in decisions, and in my opinion it is now still the law, as it surely should be, since it is founded on the experience of centuries and the well-established average of the length of human life. The will is admitted to probate.

Probate decreed.