In the Matter of the Estate of FRANK PARDY, Deceased.

Surrogate's Court, Clinton County, November 14, 1936.

*James B. Stearns* [*Egbert C. Everest* of counsel], for the petitioner, Frederick Arnold, executor named in the alleged will.

*Pierce & Holcombe* [*Kenneth H. Holcombe* of counsel], for John Crook, Grace Henton Shaw and J. S. Henton.

*Thomas B. Cooter*, for Katherine Crook White.

*F. Claude O'Connell*, for Charlotte Penfield.

HARRINGTON, S.   On or about September 29, 1935, the decedent suffered a partial stroke on his right side and was taken to the Physicians Hospital in the city of Plattsburg on the morning of October sixth.   He remained there until his decease, on or about November 22, 1935.   According to the testimony of his attending physician, he was unable to use his right arm and right leg and he had difficulty in his speech by reason of a partial facial paralysis. He was sixty years of age.   He was a widower and was survived by three first cousins.

On September 20, 1933, the decedent executed his last will and testament prepared by his attorney, James B. Stearns.   The will was retained by the testator and a copy thereof by Mr. Stearns. This will provided a fund for the perpetual care of his cemetery lot in the sum of $150, made two minor specific bequests and a legacy

of $500 to Mary Poirier, and bequeathed and devised the residuary estate to his second cousin, Katherine Crook White. The inventory filed by the temporary administrator indicates a gross estate of approximately $3,700 personalty and $5,500 realty. Mr. Stearns and Charlotte Penfield, an employee of the decedent, were witnesses to that will. This will has not been found although a thorough search was made for the same after decedent's death. Mr. Stearns never saw the will after it was executed. Mr. Stearns and Miss Penfield testified to the due execution of this will and their testimony was not disputed. A true copy of the will was also offered in evidence. One of the objectors objected to the testimony of Miss Penfield on the ground that she was incompetent to testify because she was a legatee in the codicil to the will of September 20, 1933. Section 27 of the Decedent Estate Law makes it clear that she is a competent witness and in fact could be compelled to testify as an attesting witness. Whether by reason of her testimony she will be entitled to take any part of the decedent's estate, can be passed upon only after the instruments offered for probate have been admitted to probate. (*Matter of Davis*, 105 App. Div. 221 [3d Dept.]; affd., 182 N. Y. 468.)

On October 11, 1935, Mr. Stearns was advised that Mr. Pardy desired to see him at the hospital. Mr. Stearns called at Mr. Pardy's room and found him in bed, with his head propped up. According to Mr. Stearns' testimony, Mr. Pardy advised him that he desired Charlotte Penfield to have most of his property. Mr. Stearns produced a copy of the will dated September 30, 1933, read the same to Mr. Pardy and asked the latter whether he wanted a change in the residuary clause so that Charlotte Penfield would be the residuary legatee instead of Katherine Crook White, with the other provisions of the will remaining the same. Mr. Pardy said that was what he wanted. Mr. Stearns then drafted a codicil and the same was executed by Mr. Pardy. Mr. Stearns and one John Darrah, an employee of the hospital, acted as attesting witnesses. The testimony does not indicate anything unusual with respect to the execution of the codicil, except the fact that Mr. Stearns, knowing that Mr. Pardy could not use his right hand, had Mr. Pardy execute the same by his mark. The usual requirements pertaining to the execution of a will would seem to have been followed. Both of the attesting witnesses testified to the testamentary capacity of Mr. Pardy at the time of the execution of the codicil. At no time during the completion of this matter did Mr. Stearns ask Mr. Pardy whether the original will of September 20, 1933, was in existence, nor did Mr. Pardy say whether it was in existence. Mr. Stearns testified that he assumed that it was in existence. Upon Mr. Stearns'

return to Mr. Pardy's room to have the codicil executed, Mr. Pardy said to Mr. Stearns, " I didn't tell you there was another Will." Mr. Stearns replied, " I don't think it will make any difference." Mr. Stearns was not certain as to whether this conversation took place before or after he read the proposed codicil to Mr. Pardy. The context of the codicil is as follows:

" Whereas I Frank Pardy of the village of Rouses Point, Clinton County and State of New York, did make my last Will and testament dated September 20, 1933,

" Now, therefore, I make this codicil to said Will.

" I hereby revoke the eighth clause of my said will giving the residue of my estate to Mrs. Minor White, née Katherine Crooke of 144 Neville Place, Corina, California and daughter of Ralph and Clara Crook formerly of Rouses Point, N. Y., and instead and place thereof, give the said residue, bequeathed and devised unto Charlotte Penfield of Rouses Point, N. Y. and assistant for many years in my store at that place. I do this in view of her valuable and faithful services in my store in said village.

" Hereby ratifying and confirming all the other paragraphs of my said will, I affix my hand and seal this eleventh day of October, 1935."

Charlotte Penfield, mentioned in the instrument above mentioned, had at the time of the execution thereof been in the employ of Mr. Pardy as a clerk in his store at Rouses Point about eleven years. She continued in that capacity until his decease.

Except for the examination of the attesting witnesses, as above indicated, no proof was offered to indicate that Mr. Pardy lacked testamentary capacity at the time of the execution of the codicil. All interested parties stipulated that no formal objections to the instruments offered for probate need be filed, that the trial of the issues by a jury be waived, and that all issues of probate should be decided by the court with the same force and effect as if formal objections had been filed. At the close of the testimony, the proponent moved that the will of September 20, 1933, be admitted to probate as a lost will; that in case this motion was denied that the will of September 20, 1933, together with the codicil above mentioned be probated as decedent's last will and testament; and in case both motions were denied that the codicil be probated as the last will and testament of the decedent.

As the objectors to the probate of either or both of these instruments did not submit any proof tending to indicate lack of testamentary capacity on the part of Mr. Pardy, either at the time of the execution of the will of September 20, 1933, or the codicil dated October 11, 1935, I am satisfied from the testimony offered

on behalf of the proponent and so find that Mr. Pardy did possess testamentary capacity at the time of the execution of both of these instruments, and that both of them were duly executed.

Can the will of September 20, 1933, be admitted to probate as a lost will under section 143 of the Surrogate's Court Act, without reference to the codicil above mentioned?

No evidence was submitted to indicate that "the will was in existence at the time of the testator's death or was fraudulently destroyed in his lifetime," as required by section 143 of the Surrogate's Court Act. If a will, shown once to have existed and to have been in the testator's possession, cannot be found after his death, the legal presumption is that he destroyed it *animo revocandi*. (*Matter of Staiger*, 243 N. Y. 468, 472; *Matter of Cunnion*, 201 id. 123; *Matter of Kennedy*, 167 id. 163; *Collyer* v. *Collyer*, 110 id. 481; *Knapp* v. *Knapp*, 10 id. 276.) As was said in *Matter of Staiger* (*supra*, at p. 472): "There is no proof that Mrs. Staiger destroyed her will, but when a will previously executed cannot be found after the death of a testator there is a strong presumption that it was revoked by the testator and this presumption stands in the place of positive proof. One who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof."

Here there is neither positive proof nor adequate proof, in fact there is no proof, to overcome the presumption that the will of September 20, 1933, last seen in the testator's possession on the day it was executed, was revoked by the testator. This instrument alone cannot, therefore, be admitted to probate as the last will and testament of decedent.

Can the instrument of September 20, 1933, with the codicil of October 11, 1935, together be admitted to probate as constituting the last will and testament of decedent?

From the quotation above mentioned in *Matter of Staiger* (*supra*, at p. 472) it is to be noted that the court states that the proponent of a lost will, last seen in the testator's possession, must assume the burden of overcoming the presumption that it was revoked by the testator by "adequate proof." An extended study of the numerous cases concerning the probate of lost wills gives little light on the question of what is to be deemed "adequate proof" to overcome such presumption. It is clear that oral declarations of the testator, when not a part of the *res gestæ*, are not admissible either to prove the execution of the will or its revocation or to repudiate the presumption of revocation from the fact that no will is found after death. (*Matter of Staiger, supra*, p. 472; *Matter*

of *Kennedy, supra,* p. 176; *Matter of Stickney,* 161 N. Y. 42; *Matter of Cable,* 213 App. Div. 512, 516 [3d Dept.].) In *Matter of Campbell* (170 N. Y. 84, at p. 86) it was held that the effect of a codicil to a will which had been revoked by a later will was to revive and republish the earlier will as of the date of the codicil. The court held among other things that " the codicil to the earlier will *implies its existence* and effects, impliedly, if not expressly, the revocation of the intermediate will." (See, also, *Matter of Brann,* 219 N. Y. 263, 268; *Matter of Greenberg,* 261 id. 474, 479, and *Brown* v. *Clark,* 77 id. 369, 375, that the effect of a codicil is to republish a will and make it speak again from the new date so far as it is not changed by the codicil.) In the light of these cases, is the context of the codicil of October 11, 1935, and the due execution thereof sufficient to overcome the presumption that the will of September 20, 1933, was not in existence at the time of decedent's death? I believe this must be answered in the affirmative. This codicil is not objectionable as being an oral declaration of the decedent to the existence of the will of September 20, 1933, as of the date of the execution of the codicil, as it is executed with all the formalities required for the execution of a will by section 21 of the Decedent Estate Law. At the time of its execution, a correct copy of the will of September 20, 1933, was read to the testator by his attorney. The codicil refers to that will and ratifies and confirms it, except as to the paragraph thereof which it revoked. I believe that the due execution of the codicil overcomes the presumption that the will of September 20, 1933, was destroyed by the testator and implies its existence, at least to the date of the execution of the codicil. The evidence is clear as to the articles taken to the hospital by the decedent and there is no testimony to indicate that the will of September 20, 1933, was one of such articles. There is no evidence that from the date of the execution of the codicil to the date of testator's death he gained possession of the will of September 20, 1933. The nature of his illness and his confinement to the hospital indicate strongly that he made no attempt to secure possession of it. Where it is shown that a will was not in the possession of the testator at the time of his death, there is no presumption that he destroyed it *animo revocandi.* The testimony indicates clearly that the decedent did not have possession of his will of September 20, 1933, on the date of the execution of the codicil. It also indicates the improbability, if not the impossibility, of his securing it after the date. I believe this testimony is sufficient circumstantial evidence to indicate that he did not after the date of the execution of the codicil destroy the will of September 20, 1933, and I so find.

The fact that at the time of the execution of the codicil he remarked, " I didn't tell you there was another will," does not in any wise affect the republication of the will of September 20, 1933, for as stated in *Matter of Campbell* (*supra*, at p. 86), " the codicil to the earlier will *implies its existence* and effects, impliedly, if not expressly, the revocation of the intermediate will." Accordingly, even if we assume that the remark of the testator above mentioned was intended to indicate that he had by a subsequent will revoked the will of September 20, 1933, the codicil of October 11, 1935, revoked that intermediate will and served to republish the will of September 20, 1933.

I, therefore, hold that the legal effect of the codicil of October 11, 1935, was to republish the will of September 20, 1933. The due execution of the latter instrument and that of the will of September 20, 1933, having been shown, and the testamentary capacity of the testator at the time of the execution of both instruments having been adequately proven, I hold that the instrument of September 20, 1933, with the codicil of October 11, 1935, jointly constitute the last will and testament of the decedent and should be admitted to probate as such.

Having determined that the instruments of September 20, 1933, and October 11, 1935, together constitute and should be probated as the last will and testament of the decedent, it would seem unnecessary to pass upon the question of whether the instrument of October 11, 1935, alone could be admitted to probate as the last will and testament of decedent. However, it may not be amiss to express the views of this court on that matter, having in mind that it may be important at a later date in the determination of whether Charlotte Penfield is qualified to take the estate bequeathed to her in the codicil by reason of her testimony to the will of September 20, 1933. There is authority for the proposition that a codicil may be probated as an independent instrument when the will to which it refers has been rendered inoperative by law, as by marriage of a woman (*Brown* v. *Clark*, 77 N. Y. 369), or to one which was executed while the testator was of unsound mind or under restraint. (*Cook* v. *White*, 43 App. Div. 388; affd., 167 N. Y. 588.) However, the rule permitting the probate of a codicil as an independent instrument from the will to which it refers requires that it be complete in itself as to be capable of execution and not dependent upon the will to which it attempts to refer. (*Matter of Emmons*, 110 App. Div. 701, 704, 705.) In the latter case the will to which the codicil referred was unsigned and could, therefore, not be admitted to probate. In the codicil the testator made an additional bequest of $10,000 and appointed an executor. It

was held that the codicil was sufficiently complete in itself to permit its probate.  A similar case is that of *Matter of Steiner* (142 Misc. 710, 712).  In *Matter of Francis* (73 Misc. 148, 161, 162) a codicil was denied probate because the court found that the provisions of the will and codicil were so complicated with and dependent upon each other as to have no separate and independent existence and the probate of the codicil was denied.  In the instant case the codicil bequeaths and devises the testator's residuary estate.  A residuary estate cannot, of course, be determined until all the legacies as well as funeral expenses and expenses of administration are paid.  The instrument of September 20, 1933, aside from providing for a legacy for the perpetual care of the testator's cemetery lot and making two specific bequests, also provides a legacy of $500 to Mary Poirier.  It cannot, therefore, be held that the codicil of October 11, 1935, is in and of itself a complete instrument, for to probate it alone would not carry out the intent of the testator as expressed in the paragraphs of the instrument of September 20, 1933, preceding the residuary clause.  I am, therefore, of the opinion that the instrument of October 11, 1935, alone could not be admitted to probate.

Prepare decree accordingly.